The Jeffersonville Association and Others *v.* Fisher.

*The Jeffersonville Association*, a corporation, being indebted to *A.*, as the assignee of certain claims against them, and having a decree of foreclosure against certain real estate, passed an order that, to carry out the intention of the company to make a final settlement of their affairs, said real estate, &c., should be placed in the hands of *A.* and *B.*, for the purpose of settling, first, the amount due to *A.*, and then the other liabilities of the association, subsequently accounting to the board for the balance. *A.* bid off the land in the name of himself and *B.*, at the sale upon foreclosure, but the sheriff, by the direction of the association, conveyed the land to *B.* only. At the time the land was bid off, *A.* also held a decree of foreclosure upon a mortgage of other land, by assignment, and the covenant of the association for the removal of the incumbrance thereof.

*Held,* that the order of the board did not confer upon *A.* a power coupled with an interest in the land bid off by him.

*Held,* also, that *A.* had no authority to bid off the land in the name of himself and *B.*, and that the purchase could not bind the company unless afterward confirmed by them.

A power coupled with an interest is created by an instrument which vests the title to the subject of the agency in the agent, in such a manner that he may execute the power in his own name.

In the case of a naked power, the death of the principal puts an end to it, but if by virtue of the power the title to the thing has passed to the agent, it is irrevocable either by the death or act of the principal.

By the R. S. 1852, where upon the statements in the pleadings one party is entitled by law to judgment in his favor, judgment must be so rendered by the Court, though a verdict has been found against such party.

It is not the name given to an agent, but the acts he is authorized to do, which determine the extent of his authority.

Whether a person who has acted as a director of a corporation was legally such, can not be inquired into collaterally.

APPEAL from the *Clark* Circuit Court.

GOOKINS, J.—This was a bill in chancery, brought by *Fisher* against the *Jeffersonville Association, Lawrence* and others, the object of which was to set aside a conveyance made by the sheriff of *Clark* county to *Lawrence*, of certain property known as the *Jeffersonville Springs. Lawrence* had sold the property to *Mitchell* and others, who were made defendants, and charged with notice of the plaintiff's equity. The Circuit Court sustained the bill, ordered the conveyance to *Lawrence*, and those subsequent to it, to be set aside, and made a decretal order for

May Term,
1856.

The Jeffer-
sonville
Association
v.
Fisher.

the sale of the property and payment of the money into Court. From this judgment the defendants appeal.

The facts, so far as it is necessary to state them, are as follows:

The *Jeffersonville Association*, an incorporated company, in which *Lawrence* and *Fisher* were large stockholders, owned a large number of lots in the town of *Jeffersonville*. With the design of closing up their affairs, they made a division of their lots among the stockholders, and in pursuance thereof, on the 29th of *March*, 1848, conveyed to *Lawrence* and *Fisher*, by deed with covenants of warranty and against incumbrances, sundry lots and blocks, of the estimated value of 29,205 dollars. Among the property so conveyed were lots numbers nine and ten, with a hotel called the "*Jeffersonville House*," situated upon them. This property was incumbered to the amount of 4,000 dollars, by a mortgage, which incumbrance the covenants in the conveyance to *Lawrence* and *Fisher* bound the company to remove. *Hurst*, the holder of this incumbrance, had previously obtained a decree of foreclosure upon his mortgage, and *Lawrence*, previous to *September*, 1847, had paid *Hurst* the amount of the debt, and taken an assignment of the decree of foreclosure, which, on the 24th of *September*, 1847, he assigned to *Carson* and others, as collateral security to secure a debt of some 2,800 dollars. On the 6th of *December*, 1849, *Carson & Co.* assigned the decree to *Morris*, who paid them the amount which *Lawrence* owed them. The plaintiff had bought out *Lawrence's* interest in the *Jeffersonville Association*, including his interest in the *Hurst* decree, and the assignment by *Carson & Co.* to *Morris* was made at his instance; and on the 30th of *March*, 1850, *Morris* assigned the decree to *Fisher*.

The association, previous to 1848, held a mortgage on the *Jeffersonville Springs*, executed by *Gutzell* and others, on which they had obtained a decree of foreclosure, and on the 7th day of *January*, 1848, they passed the following order:

"*Resolved*, That in order to carry out the intention of

the company to make a final settlement of their affairs,
the springs property and claims be placed in the hands of
Messrs. *Lawrence* and *Fisher*, for the purpose of settling,
first, the amount due *J. Lawrence* for borrowed money,
and then the other liabilities of the association, subse-
quently accounting to the board for the balance."

On the 5th of *May*, 1849, the springs property was sold
by the sheriff of *Clark* county by execution on the decree
of foreclosure against *Gutzell* and others, and was bid in
by *Fisher*, in the name of himself and *Lawrence*, for 2,000
dollars, but no deed was taken from the sheriff. Nothing
further was done until *February* 28, 1850, when *Green*,
the president of the association, directed the sheriff of
*Clark* county to convey the property to *Lawrence*, which
he did on the 2d of *March* following. On the 7th of
*March*, the association, by a resolution of the board of
directors, confirmed the act of *Green*, their president, di-
recting the conveyance to be made to *Lawrence*, and re-
moved *Fisher* from the trust, conferring the whole power.
in the premises upon *Lawrence*, who afterwards sold the
property to *Mitchell* and others for 6,000 dollars, who had
notice of the facts, and besides have paid a part only of
the purchase-money, so that they can not claim to hold as
*bona fide* purchasers.

The ground mainly relied on by the plaintiff, is, that by
virtue of the appointment of *January* 7th, 1848, he and
*Lawrence* became trustees of the association, and that
they acquired, by virtue of that appointment, an interest
in the springs property; that the specific object of the ap-
pointment was to enable them to appropriate that prop-
erty to the payment of the mortgage on the "*Jeffersonville
House;*" that having become the owner of that mortgage
subsequently by the purchase of all of *Lawrence's* interest
in the property of the association, and by obtaining the
decree to be assigned to himself, he had a direct interest
in the springs property, of which the association had no
power to deprive him; in short, that he had *a power cou-
pled with an interest*, which the association could not re-
voke; that the pretence of removing him from the trust

May Term,
1856.

THE JEFFER-
SONVILLE
ASSOCIATION
v.
FISHER.

and ordering the property to be conveyed to *Lawrence*, was a fraud upon him. It is on this ground that the conveyance by the sheriff to *Lawrence* is attacked, and on this ground the Circuit Court set aside that conveyance. The main question in the case is, was this a power coupled with an interest?

A power coupled with an interest is created by an instrument which vests the title to the subject of the agency in the agent, in such a manner that he may execute the power in his own name. *Story* on Agency, s. 164. The act to be done by an agent must be done either in his own name or that of his principal. If it is a naked power, the death of the principal puts an end to it, for the manifest reason that an act can not be done in the name of one who is dead; but if, by virtue of the power, the title to the thing has passed to the agent, it is irrevocable, either by the death or the act of the principal, for the reason that he has both an interest in the thing to be done, and the power to do it in his own name. *Story* on Agency, s. 489.—*Hunt* v. *Rousmanier*, 8 Wheat. 174.

It is not contended that there was any other transfer of the springs property to *Lawrence* and *Fisher* than what is contained in the order for their appointment. That did not convey, nor profess to convey, to them any interest in that property. The language of the order is that "the springs property and claims be placed in the hands of Messrs. *Lawrence* and *Fisher*, for the purpose of settling, first, the amount due *J. Lawrence* for borrowed money, and then the other liabilities of the association."

But it is said that as *Fisher* was, at the time of the attempted revocation, a creditor of the association, and particularly as he held the decree of foreclosure on the "*Jeffersonville House*" by assignment, and also held the covenant of the association to remove that incumbrance, he had such an interest in the proceeds of the agency as made it irrevocable. Admitting it to be so, and that, for that reason, the agency was irrevocable, (and we incline to that opinion,) that does not alter the case. Such an agency is in no respect different from that of an attorney

May Term,
1856.

THE JEFFER-
SONVILLE
ASSOCIATION
v.
FISHER.

at law, who receives a demand for collection from a person who is indebted to him, with instructions to apply the proceeds of the collection to the payment of his debt. Surely it will not be contended that the attorney, having obtained a judgment, execution and levy upon real estate, has authority, merely by virtue of that appointment, to bid off property at the sheriff's sale in his own name. The authority conferred no right on *Fisher* to bid off the springs property in the name of himself and *Lawrence*, and such purchase was not binding upon the association unless they afterwards confirmed it. The bill does not allege any confirmation; it assumes that the appointment conferred the power. The resolution of *January* 7, 1848, appointing *Lawrence* and *Fisher* to this agency, is not set out in the bill, but it is set out in the answer of *Lawrence*, which is made a cross-bill against *Fisher*, and is not denied by him. It stands, therefore, for the purposes of this action, as admitted, that that was the authority under which they acted. As *Fisher* acquired no right to the springs property, either by virtue of his appointment, or by bidding off the property at the sheriff's sale, it follows that the whole case must fall, for the want of a foundation on which the judgment of the Court may rest. Neither the finding of the Court nor the verdict of a jury would cure the defect. On this point the statute is as follows: " Where upon the statements in the pleadings one party is entitled by law to judgment in his favor, judgment shall be so rendered by the Court, though a verdict has been found against such party." 2 R. S., p. 121, s. 372.

There are some minor points made by the appellee, which it may be proper to notice. One is that *Lawrence* and *Fisher* were described in the order for their appointment, and in the order of revocation, as trustees, and the Circuit Court seems to have given weight to that circumstance. Every agent is in some sense a trustee. It is not the name given to the agent, but the acts which he is authorized to do, which must determine whether they are valid or not, when done.

May Term,
1856.

THE JEFFER-
SONVILLE
ASSOCIATION
v.
FISHER.

Another position assumed, is, that *Lawrence* having sold out all his stock in the company, could not, under the charter, be a director, and that as four were required to form a quorum, and but four were present, and *Lawrence* was one of them, when the order revoking *Fisher's* authority was made, the act was void. We do not place the case on the validity of that act, but upon the insufficiency of the power, admitting it to be unrevoked, to confer the right claimed. And, besides, the validity of the act could not be attacked in that way. *The Newcastle, &c., Turnpike Company* v. *Bell*, 8 Blackf. 584.— *The Covington, &c., Turnpike Company* v. *Moore*, 3 Ind. 510.— *The Western Plank-Road Company* v. *Stockton, ante,* p. 500.

Again, it is said the plaintiff was a creditor of the association, both as holder of the *Hurst* mortgage, and independent of it. These facts stand admitted; but they only give the plaintiff the right to have his claims ascertained and paid; they do not touch the validity of the conveyances made to *Lawrence* by order of the association, nor of those subsequently made by the same order. The judgment proceeds on the ground that the plaintiff had acquired an interest in the property itself, and does not attempt to ascertain what is due him. There is no finding in his favor for any amount, nor does it ascertain the rights of any party or parties to the money which is ordered to be paid into Court. The appellee's answer to the cross-bills of *Lawrence* and the association, expressly repudiates the idea of going into an account. The entire case is conceived and carried through upon the idea that the plaintiff had acquired an interest in the property. It is consistent with that hypothesis and no other; and if well conceived in law, his claim to relief would have been invincible.

We are of the opinion that this bill can not be sustained, and that it must be dismissed; but as the plaintiff may be entitled to some other relief, it should be dismissed without prejudice to such rights.

*Per Curiam.*—The judgment is reversed with costs.

Cause remanded, with instructions to the Circuit Court to dismiss the suit, without prejudice to the right of the appellee to proceed for the recovery of the amount due him.

*C. Dewey* and *R. Crawford,* for the appellants.

*W. T. Otto, J. S. Davis* and *J. D. Ferguson,* for the appellee.