The Terre Haute and Indianapolis Railroad Company *v.* McMurray.

No. 11,132.

## THE TERRE HAUTE AND INDIANAPOLIS RAILROAD COM-PANY *v.* McMURRAY.

RAILROAD.—*Injury to Employee.*—*Principal and Agent.*—*Authority of Conductor to Employ Physician.*—Where a brakeman of a railroad company, while in the line of his duty, is injured at a point distant from the chief offices of the company, and there is an urgent necessity for the employment of a surgeon to render professional services to the injured brakeman, the conductor, if he is the highest agent of the company on the ground, has authority to bind the corporation by the employment of a surgeon to render professional services required by the emergency.

SAME.—*General Liability of Railroad Companies for Surgical Services Rendered to its Servants.*—There is no general liability on the part of a railroad company to provide surgical aid for sick or wounded servants, nor has the conductor any general authority to employ a surgeon, but an emergency may arise vesting such authority in the conductor.

From the Clinton Circuit Court.

*J. G. Williams,* for appellant.

*J. Claybaugh* and *B. K. Higinbotham,* for appellee.

ELLIOTT, J.—The facts in this case are simple, and lie within a narrow compass, but the questions of law are important and difficult.

Frankfort is a way station on the line of appellant's road, distant many miles from the principal offices of the company and from the residences of its chief officers. At this station, at one o'clock of the morning of July 2d, 1881, Thomas Coon, a brakeman in the service of the appellant, had his foot crushed between the wheel of a car of the train on which he was employed as a brakeman, and a rail of the track. The injury was such as demanded immediate surgical attention. The conductor of the train requested the appellee, who was a surgeon, residing in the town of Frankfort, to render the injured man professional aid, and informed the appellee that the company would pay him for such services. At the time the accident happened, and at the time the surgeon was employed, there was no officer superior to the conductor at the town of

The Terre Haute and Indianapolis Railroad Company v. McMurray.

Frankfort. There was at the station a resident agent who had full knowledge of the injury to Coon, and of appellee's employment. This agent was in telegraphic communication with the principal officers of the company, but did not communicate with them. The trial court held the appellant liable for the reasonable value of the services rendered by the appellee, and awarded him $100.

In ordinary cases, a conductor or other subordinate agent has no authority to employ surgical assistance for a servant of the corporation who receives an injury or becomes ill. We do not doubt that the general rule is that a conductor has no authority to make contracts with surgeons, and if this principle governs all cases the discussion is at an end; but we do not think it does rule every case, for there may be cases so strongly marked as to constitute a class in themselves and one governed by a different rule.

The authority of an agent is to be determined from the facts of the particular case. Facts may exist which will greatly broaden or greatly lessen an agent's authority. A conductor's authority in the presence of a superior agent may dwindle into insignificance; while in the absence of a superior it may become broad and comprehensive. An emergency may arise which will require the corporation to act instantly, and if the conductor is the only agent present, and the emergency is urgent, he must act for the corporation, and if he acts at all, his acts are of just as much force as that of the highest officer of the corporation. In this instance the conductor was the highest officer on the ground; he was the sole representative of the corporation; he it was upon whom devolved the duty of representing the corporation in matters connected within the general line of his duty in the sudden emergency which arose out of the injury to the fellow-servant immediately under his control; either he, as the superior agent of the company, must, in such cases, be its representative, or it has none. There are cases where the conductor is the only representative of the corporation that in the emergency it can

possibly have.   There are cases, where the train is distant
from the supervision of superior officers, where the con-
ductor must act, and act for the company, and where, for
the time, and under the exigencies of the occasion, he is
its sole representative, and if he be its only representative,
he must, for the time and the exigency, be its highest repre-
sentative.   Simple examples will prove this to be true.   Sup-
pose, for illustration, that a train is brought to a halt by the
breaking of a bolt, and that near by is a mechanic who can
repair the broken bolt and enable the train to proceed on its
way, may not the conductor employ the mechanic?   Again,
suppose a bridge is discovered to be unsafe, and that there are
timbers at a neighboring mill which will make it safe, may
not the conductor, in behalf of his principal, employ men to
haul the timber to the bridge?   Once more, suppose the en-
gineer of a locomotive to be disabled, and that it is necessary
to at once move the train to avoid danger, and there is near
by a competent engineer, may not the conductor employ him
to take the train out of danger?   In these examples we mean
to include, as a silent factor, the fact that there is an emer-
gency, allowing no time for communicating with superior of-
ficers, and requiring immediate action.   If it be true that
there are cases of pressing emergency where the conductor is
on the special occasion the highest representative of the com-
pany, then it must be true that he may do, in the emergency,
what the chief officer, if present, might do.   If the conductor
is the only agent who can represent the company, then it is
inconceivable that he should, for the purposes of the emer-
gency, and during its existence, be other than the highest of-
ficer.   The position arises with the emergency, and ends with
it.   The authority incident to the position is such, and such
only, as the emergency imperatively creates.

Assuming, as we may justly do, that there are occasions
when the exigency is so great, and the necessity so pressing,
that the conductor stands temporarily as the representative
of the company, with authority adequate to the urgent and im-

mediate demands of the occasion, we inquire what is such an emergency as will clothe him with this authority and put him in the position designated. Suppose that a locomotive is overturned upon its engineer, and he is in immediate danger of great bodily harm, would it not be competent for the conductor to hire a derrick, or a lifting apparatus, if one were near at hand, to lift the locomotive from the body of the engineer? Surely some one owes a duty to a man, imperilled as an engineer would be in the case supposed, to release him from peril, and is there any one upon whom this duty can be so justly put as upon his employer? The man must, in the case supposed, have assistance, and do not the plainest principles of justice require that the primary duty of yielding assistance should devolve upon the employer rather than on strangers. An employer does not stand to his servants as a stranger, he owes them a duty. The cases all agree that some duty is owing from the master to the servant, but no case that we have been able to find defines the limits of this duty. Granting the existence of this general duty, and no one will deny that such a duty does exist, the inquiry is as to its character and extent. Suppose the axle of a car to break because of a defect, and a brakeman's leg to be mangled by the derailment consequent upon the breaking of the axle, and that he is in imminent danger of bleeding to death unless surgical aid is summoned at once, and suppose the accident to occur at a point where there is no station and when no officer superior to the conductor is present, would not the conductor have authority to call a surgeon? Is there not a duty to the mangled man that some one must discharge? and if there be such a duty, who owes it, the employer or a stranger? Humanity and justice unite in affirming that some one owes him this duty, since to assert the contrary is to affirm that upon no one rests the duty of calling aid that may save life. If we concede the existence of this general duty, then the further search is for the one who in justice owes the duty, and surely, where the question comes between the employer

and a stranger, the just rule must be that it rests upon the former.

Authorities upon the question we are discussing are far from abundant. In the case of *Marquette, etc., R. R. Co.* v. *Taft*, 28 Mich. 289, a laborer in the service of the company was struck and injured by one of its trains, and the yardmaster and the superintendent employed a surgeon, and the court divided on the question of the company's liability, GRAVES and CAMPBELL, JJ., denying its liability and COOLEY, J., and CHRISTIANCY, C. J., affirming that it was liable to the surgeon. One opinion was written by GRAVES, J., and proceeds on the broad ground that no officer of the company could bind it to pay for surgical services rendered an employee. That case is, however, distinguishable from the present, even upon the theory adopted in the opinion of Judge GRAVES, for in this case there was an immediate necessity for surgical aid, while in the one cited there is not shown to have been any such necessity. Judge COOLEY'S opinion is a model of judicial reasoning, and forcibly maintains the duty of railway companies to provide surgical aid for its servants in cases of accidents incident to their employment. In one place he says: " We think it their duty to have some officer or agent, at all times, competent to exercise a discretionary authority in such cases, and that on grounds of public policy they should not be suffered to do otherwise." At another place he says: "We shall not stop to prove that there is a strong moral obligation resting upon any one engaged in a dangerous business, to do what may be immediately necessary to save life or prevent an injury becoming irreparable, when an accident happens to a person in his employ. We shall assume this to be too obvious to require argument." Another extract from this opinion, strongly applicable, is this: "There can be no doubt that it is within the scope of somebody's employment for a railway company to cause a beast which is injured in carriage or run over at a crossing to be picked up and have the attention proper and suitable to its case; and if no one is authorized to

do as much for the faithful servant of the company who is in like manner injured, but all persons in its service are impliedly forbidden to incur on its behalf any expense beyond what may be necessary to remove him out of the way of their trains and machinery—even to convey him to his house, or to save his life by binding up a threatening wound—then if such is the law, the courts must not hesitate to apply it, even though it be impossible to avoid feeling that it ought not to be the law, and that no business of this extensive and hazardous nature ought to be suffered to be carried on with no one for the major part of the time empowered to recognize and perform a duty which, at least on moral grounds, is so obvious and imperative. But we do not think such is the law."

In the case of *Northern Central R. W. Co.* v. *State*, 29 Md. 420, it was held that it is the duty of agents in charge of a railroad train to take care of one injured by a collision, and to do it with a proper regard to his safety and the laws of humanity.

It was held in *Walker* v. *Great Western R. W. Co.*, L. R., 2 Exch. 228, that the general manager of the company had authority to employ a surgeon for a servant injured in the company's service. Chief Baron KELLY, in the course of the argument, inquired: "Must a board be convened before a man who has both his legs broken can have medical assistance?" See 36 Law Journal, (C. L.) 123.

In *Swazey* v. *Union Manufacturing Co.*, 42 Conn. 556, the court held that the business manager of a manufacturing corporation had authority to employ surgical aid for a lad who had received an injury in its service.

In *Atlantic, etc., R. R. Co.* v. *Reisner*, 18 Kan. 458, the holding was that the general agent of a railroad company was authorized to employ a surgeon to attend one of the brakemen injured while in the service of the company. The court said, in the course of the opinion: "In other words, the general agent of the company is virtually the corporation itself." This is necessarily true in cases where the agent is

required to act for the corporation, and is also true where the agent who acts is the highest agent of the corporation present, although he may not be the general agent of the corporation. A corporation can act, and can be present, only by its agent, and when it must act and must be present at a particular time and place, then it is present, and does act, through the highest agent who is on the ground. If the agent represents the corporation by authority, then, so far as he represents it in the particular matter, he is, in law, the corporation, for through him it is present and acting. If, then, the conductor is the highest agent on the ground, and the corporation must and does act, his act is just as much that of the corporation in the particular instance, and circumscribed by the exigencies of the special occasion, as though he were much higher in authority. The ruling in *Atchison, etc., R. R. Co.* v. *Reecher*, 24 Kan. 228, is that the general superintendent of a railroad company has authority to employ a surgeon to attend a man injured while in its service. The cases of *Toledo, etc., R. W. Co.* v. *Rodrigues*, 47 Ill. 188, *Toledo, etc., R. W. Co.* v. *Prince*, 50 Ill. 26, *Indianapolis, etc., R. R. Co.* v. *Morris*, 67 Ill. 295, *Cairo, etc., R. R. Co.* v. *Mahoney*, 82 Ill. 73, cited and relied on by the appellant, all recognize the doctrine that the superintendent or general agent has authority to employ a surgeon to treat a servant who has been injured. If we are right in our conclusion that an emergency may arise which will constitute a conductor, for the time and the emergency, the chief officer of the corporation present, then these cases are strongly in support of our position that he may, in cases of urgent necessity, bind the corporation by contracting with a surgeon. For, once it is conceded that the officer having a right to represent the company is the company, it inevitably follows that his contract is that of the corporation. These cases do deny, however, in general terms, the authority of a station agent or conductor to employ a surgeon, but they affirm that if the superintendent has notice of the services rendered by the

surgeon, and does not disavow the agent's acts, the company will be bound. It is to be noted that in all of these cases the company was held liable on the ground of ratification by the superintendent, and there was really no decision of any other question than that a failure of the superintendent to disavow the contract of the conductor or station agent rendered the company liable. There was no discussion of the authority of a conductor in cases of immediate and urgent necessity. The reasoning of the court in these cases strongly indicates that the act of the superior officer, whoever he may be, on the occasion and under the emergency, would be deemed the act of the corporation which he assumes to represent. In the last of these cases it is said: "While a railroad company is under no legal obligation to furnish an employee, who may receive injuries while in the service of the company, with medical attendance, yet, where a day laborer has, by an unforeseen accident, been rendered helpless when laboring to advance the prosperity and the success of the company, honesty and fair dealing would seem to demand that it should furnish medical assistance." If it be conceded that honesty and fair dealing require that medical assistance should be furnished, then the law requires it, for the law always demands honesty and fair dealing. It would be a cruel reproach to the law, and one not merited, to declare that it denied to an injured man what honesty and "fair dealing require."

If it should appear that a man had been denied what honesty and fair dealing required of his master, and death should result, it would seem clear, on every principle of justice, that the master would be responsible for the servant's death. Of course, this duty could not rest upon the master in ordinary cases, but should rest upon him in extraordinary cases, where immediate medical assistance is imperatively demanded. The case of *Tucker* v. *St. Louis, etc., R. W. Co.*, 54 Mo. 177, does decide that a station agent has no authority to employ a surgeon, but no element of pressing necessity entered into the

case. There is no authority cited in support of the opinion, nor is there any reasoning. All that is said is: " It is only shown that they " (the station agent and the conductor) " were agents of defendant in conducting its railroad business, which of itself could certainly give them no authority to employ physicians, for the defendant, to attend to, and treat, persons accidentally injured on the roads." It may be that this statement is true in ordinary cases, but when we add the element of immediate and pressing necessity, a new and potent factor is introduced into the case. A brief opinion was rendered in *Brown* v. *Missouri, etc., R. W. Co.*, 67 Mo. 122, declaring that the superintendent of the company could not bind the company for " a small bill of drugs furnished a woman who had been hurt by the locomotive or cars of the defendant." It may be said of the last cited case that it presented no feature of emergency requiring prompt action, and for aught that appears in the meagre opinion of a very few lines, there may have been no necessity for action. But it is further to be said of it, that if it is to be deemed as going to the extent of denying the right of one of the principal officers to contract for medicine in a case of urgency, it finds no support from any adjudged case. The case of *Mayberry* v. *Chicago, etc., R. R. Co.*, 75 Mo. 492, is not in point, for there a physician employed to render medical aid, and employed for no other purpose, undertook to contract for boarding for an injured man.

The learned counsel for appellant says, in his argument: " In several of these cases the court takes occasion to say that humanity, if not strict justice, requires a railroad company to care for an employee who is injured without fault on his part in endeavoring to promote the interests of the company. Whilst this may be true, I think humanity and strict justice, too, would at least permit the company to adopt the proper means for exercising the required care and of determining the cases wherein it ought to be exercised."

It seems to us that while the concession of the counsel is required by principle and authority, his answer is far from

The Terre Haute and Indianapolis Railroad Company *v.* McMurray.

satisfactory.   Can a man be permitted to die while waiting for the company to determine when and how.it shall do what humanity and strict justice require?   Must there not be some representative of the company present in cases of dire necessity to act for it?   The position of counsel will meet ordinary cases, but it falls far short of meeting cases where there is no time for deliberation, and where humanity and justice demand instant action.   From whatever point of view we look at the subject we shall find that the highest principles of justice demand that a subordinate agent may, in the company's behalf, call surgical aid, when the emergencies of the occasion demand it, and when he is the sole agent of the company in whose power it is to summon assistance to the injured and suffering servant.   Humanity and justice are, for the most part, inseparable, for all law is for the ultimate benefit of man. The highest purpose the law can accomplish is the good of society and its members, and it is seldom, indeed, that the law refuses what humanity suggests.   Before this broad principle bare pecuniary considerations become as things of little weight. There may be cases in which a denial of the right of the conductor to summon medical assistance to one of his train men would result in suffering and death ; while, on the other hand, the assertion of the right can, at most, never do more than entail upon the corporation pecuniary loss.   It may not do even that, for prompt medical assistance may, in many cases, lessen the loss to the company by preventing loss of life or limb.

The authority of a conductor of a train in its general scope is known to all intelligent men, and the court that professes itself ignorant of this matter of general notoriety avows a lack of knowledge that no citizen who has the slightest acquaintance with railroad affairs would be willing to confess.   It is true that the exact limits of his authority can not be inferred from evidence that he is the conductor in charge of the train, but the general duty and authority may be. This general authority gives him control of the train men and of the train, and devolves upon him the duty of using rea-

sonable care and diligence for the safety of his subordinates. The authority of the conductor may be inferred, as held in *Columbus, etc., R. W. Co.* v. *Powell*, 40 Ind. 37, from his acting as such in the control of the train, but this inference only embraces the ordinary duties of such an agent.   Many cases declare that the conductor, in the management of the train and matters connected with it, represents the company.   It is true that the agency is a subordinate one confined to the subject-matter of the safety of the train and its crew, and the due management of matters connected with it, but although the conductor is a subordinate agent he yet has broad authority over the special subject committed to his charge.   It was said in *Jeffersonville Ass'n* v. *Fisher*, 7 Ind. 699, that "It is not the name given to the agent, but the acts which he is authorized to do, which must determine whether they are valid or not, when done."   In another case it was said : "The authority of an agent being limited to a particular business does not make it special; it may be as general in regard to that, as though its range were unlimited."   *Cruzan* v. *Smith*, 41 Ind. 288.   This subject was discussed in *Toledo, etc., R. W. Co.* v. *Owen*, 43 Ind. 405, where it was said : "A general agent is one authorized to transact all his principal's business, or all of his principal's business of some particular kind.   A special agent is one who is authorized to do one or more special things, and is usually confined to one or more particular transactions, such as the sale of a tract of land, to settle and adjust a certain account, or the like.   That the authority of an agent is limited to a particular kind of business does not make him a special agent.   Few, if any, agents of a railroad company do, or can attend to every kind of business of the company, but to each one is assigned duties of a particular kind, or relating to a particular branch or department of the business."   Wharton says : "A general agent is one who is authorized by his principal to take charge of his business in a particular line."   Wharton Agency, 117.   It results from these familiar principles, that the conductor of a train, so far as

concerns the direct and immediate management of the train when it is out on the road, is, in the absence of some superior officer, the general agent of the company; but even general agents do not have universal powers, and the authority of such agents is to be deduced from the facts surrounding the particular transaction. 2 Greenl. Ev., sections 64–64*a*. In some instances, then, the conductor is the general agent of the company, and we think it clear upon principle and authority, that he is such an agent for the purpose of employing surgical assistance where a brakeman of his train is injured while the train is out on the road, and where there is no superior officer present, and there is an immediate necessity for surgical treatment. A conductor can not be regarded as having authority to employ a surgeon when the train is not on the road under his control, or where there is one higher in authority on the ground, or where there is no immediate necessity for the services of a surgeon.

The rule which denies a recovery where there is mutual negligence applies only between the immediate parties. The courts do not extend the rule to cases where the defendant's negligence and that of a third person concur in producing the injury. Thus, if two trains come into collision and the managers of both are negligent, an action may nevertheless be maintained by a passenger. *Pittsburgh, etc., R. R. Co.* v. *Spencer, ante,* p. 186. So, if a man is riding with another and is injured by a collision occurring through the concurrent negligence of the driver of the vehicle and the servants of a railroad train engaged in running it, he may recover, notwithstanding the contributory negligence of the driver of the vehicle in which he was riding. *Town of Albion* v. *Hetrick,* 90 Ind. 545 (46 Am. R. 230); *Robinson* v. *New York Cent., etc., R. R. Co.,* 60 N. Y. 11; S. C., 23 Am. R. 1; *Wabash, etc., R. W. Co.* v. *Shacklet,* 105 Ill. 364; S. C., 44 Am. R. 791; *Masterson* v. *New York Cent., etc., R. R. Co.,* 84 N. Y. 247 (38 Am. R. 510); *Cuddy* v. *Horn,* 46 Mich. 596; S. C., 41 Am.

R. 178; *Bennett* v. *New Jersey, etc., Co.*, 36 N. J. 225; S. C., 13 Am. R. 435.

The doctrine of contributory negligence is by some authorities based on the principle that a man must not cast himself into danger, and by others upon the principle that one who is himself in fault can not invoke assistance from the courts against another who shares the fault with him. *Butterfield* v. *Forrester*, 11 East, 60; 1 Thompson Neg. 485. Other authorities put the doctrine on the ground that the interests of the whole community require that every one should take such care of himself as can reasonably be expected of him. Shearman & Redf. Neg., section 42. It is obvious that, whatever be deemed the true basis of the doctrine, it can not apply where the case goes beyond the plaintiff himself, or what, in law, is the same thing, his agent or servant. It is, therefore, plain that where a surgeon sues for professional services rendered at the request of the agent of a railroad corporation, no question of contributory negligence is involved. This is manifestly the practical, just, and reasonable rule. It can not be expected that a surgeon summoned to attend a case of pressing need shall be required to stop and investigate the causes of the accident, and thus take upon himself the functions of judge and jury. It is but just that he should be deemed entitled to rely on the statement of the corporate agent. Where a principal puts it in his agent's power to exercise apparent authority, the man who, in good faith, acts upon the statements of the agent should be protected. *Cruzan* v. *Smith*, 41 Ind. 288. The Supreme Court of Kansas, in a case not unlike the present, said: " The defendant in error was not compelled to institute inquiry as to the moral or legal liability of the railroad company to take care of the disabled employee before receiving him into his hotel, after the general agent of the company had agreed that the company would pay for the board and service." *Atlantic, etc., R. R. Co.* v. *Reisner*, 18 Kan. 458.

The employment of a surgeon is not an acknowledgment of a liability to the injured servant, nor can any admission

The Terre Haute and Indianapolis Railroad Company v. McMurray.

be tortured from such an act. Evidence of such an employment would be incompetent in an action by the servant, and no admission can, therefore, be implied. The employment of a surgeon is nothing more than an act of humanity and justice demanded of a railroad company in behalf of a servant injured in its service.

Judgment affirmed.

ZOLLARS, C. J., dissents on the ground that it is not sufficiently shown that the conductor had authority to bind the company by his contract with appellee.

Filed Nov. 25, 1884.

### ON PETITION FOR A REHEARING.

ELLIOTT, J.—Counsel for the appellant misconceive the drift of the reasoning in our former opinion, as well as the conclusion announced. We did not decide that a corporation was responsible generally for medical or surgical attention given to a sick or wounded servant; on the contrary, we were careful to limit our decision to surgical services rendered upon an urgent exigency, where immediate attention was demanded to save life or prevent great injury. We held that the liability arose with the emergency, and with it expired.

We did hold that where the conductor was the highest representative of the corporation on the ground, and there was an emergency requiring immediate action, he was authorized to employ a surgeon to give such attention as the exigency of the occasion made imperiously necessary; but we did not hold that the conductor had a general authority to employ a surgeon where there was no emergency, or where there was a superior agent on the ground. We think our decision was well sustained by the authorities there cited, and that it is further supported by the reasoning in Chicago, etc., R. W. Co. v. Ross, 31 Albany L. J. 8, and Pennsylvania Company v. Gallagher, 40 Ohio St. 637; S. C., 48 Am. R. 689.

If the conductor, who is the superior agent of the company on the ground, can not represent the principal so far as to

employ a surgeon to render professional services to an injured servant, and prevent the loss of life or great bodily harm, then it must be said, as it was said by the Supreme Court of the United States in *Chicago, etc., R. W. Co.* v. *Ross, supra,* that " If such conductor does not represent the company, then the train is operated without any representative of its owner."

The decision in *Louisville, etc., R. R. Co.* v. *Mc Vay, post,* p. 391, is not in conflict with our conclusion in the present case. There the road-master was not the superior agent within reach, and there was no emergency demanding immediate action. These are features which very essentially distinguish the two cases. We held in this case a doctrine held in the case cited, namely, that the conductor, or other subordinate agent, has no general authority to employ a surgeon for a sick or wounded servant of the company; but we also held that where the conductor, in control of the company's train and its brakemen, is the highest agent on the ground, he does possess an authority commensurate with an existing and pressing emergency. It seems clear to us, upon principles of fair justice and ordinary humanity, that some one must possess authority to meet an urgent exigency by employing surgical aid to save from death or great and permanent injury a servant under his control. As the reasoning in the *Mc Vay* case clearly shows, there is still another material difference between the two cases, and that is this: There the road-master appeared to only have authority over the repairs of the road; while here it appears that the conductor had charge of the injured servant, and was the highest officer of the corporation capable of acting as its representative in the emergency which had so suddenly arisen.

So far as concerns the general principle involved there is no conflict, but rather harmony, for the *Mc Vay* case clearly recognizes the doctrine that the highest agent capable of acting for the company may employ surgical aid in the proper case. Petition overruled.

Filed Jan. 27, 1885.