Filed Dec. 13, 1892.

---

No. 358.

## THE BOARD OF COMMISSIONERS OF PERRY COUNTY v. LOMAX.

COUNTY.—*Employment of Physician by Township Trustee.—Liability of County Therefor.—Demand.*—If a pauper requires a surgical operation to be performed upon him, and the township physician is incompetent to perform it, it is the duty of the township trustee to select and employ a physician to perform the needed service, and the county will be liable for the reasonable value of the services. Under such circumstances it would not be necessary for the plaintiff to allege or prove that the county physician refused to perform an operation that he could not by reason of his want of knowledge and skill. A demand upon him to perform the service was unnecessary.

SAME.—The mere fact that a board of commissioners employs physicians to attend the poor of a county will not operate as a limitation upon the power of a township trustee to employ others in cases of emergencies.

The Board of Commissioners of Perry County v. Lomax.

SAME.—*Authority of Township Trustee in Relieving Necessities.*—It is for the township trustee to determine as to the necessities of persons, and in the absence of fraud or collusion his determination is conclusive.

PRACTICE.—*Imperfection in Pleadings.— When Disregarded.— When Judgment will not be Reversed.*—Forms, variance and imperfections in the pleadings will be disregarded where they might be amended in the court below; neither will a judgment be reversed if the cause has been fairly tried and determined in the court below.

From the Perry Circuit Court.

*W. A. Land,* for appellant.

*W. Henning* and *R. M. Johnson,* for appellee.

Fox, J.—The material facts involved in this case are as follows: On the 10th day of August, 1889, one Mathias Sitzman was a pauper, living in Clarke township, Perry county, Indiana, and had at that time been confined to his bed for six weeks with a diseased leg and was very much emaciated and in a critical condition; that in order to save his life an amputation of his leg was necessary; that in June, 1889, a physician by the name of Foster was employed by the board of commissioners of said county to render medical aid to the poor of said township, he having graduated as a physician upon the 21st day of February of the same year. At the time it became necessary to perform the operation above mentioned, the said Foster was inexperienced in surgery, and had no surgical instruments, and lived fifteen miles distant from this pauper. The township trustee, knowing the critical condition of the pauper, and believing from the facts above mentioned, that the said Foster was wholly incompetent to perform the needed operation, procured two physicians of experience to visit the patient and if necessary amputate his leg. After making due examination they declined to do so, giving as a reason that in their opinion he would not survive the operation. The trustee, having information that an operation by a skilled surgeon was absolutely necessary to save the pauper's life,

saw the appellee and employed him by giving him the following written statement:

"DIXON VALLEY, IND., Aug. 10, 1889.

"*Dr. Wm. Lomax, Bristow, Indiana:*

"DEAR SIR: You will please go and examine Mathias Sitzman, a pauper of Clark township, Perry county, Indiana, and if in your judgment his leg should be amputated, call a legal board of physicians, yourself included, and perfore the operation, and also give him all necessary medical assistance, and charge Perry county a reasonable bill for said services.                M. M. DIXON,

"Overseer of the Poor, Clark Township."

Thereupon the appellee took charge of the pauper as his patient, and after making the proper preparation amputated his leg and attended him until he recovered, charging for his services the sum of $150. He presented his claim, properly verified, to the board of commissioners and payment was refused. He appealed to the Perry Circuit Court and there obtained a judgment against the county for $140. A motion for a new trial was filed and overruled, and a judgment rendered against the county. From this judgment the board of commissioners appeal to this court, and assign as error the action of the court below in overruling the motion for a new trial.

In the complaint it was charged that Foster, as the township physician, "refused to do and perform the said operation, giving as a reason for his refusal that he was not sufficiently experienced in surgery; that he did not have the necessary instruments to perform such an operation, and that he resided at too great a distance from the said Sitzman to render him the proper attention after the operation had been performed." There was evidence given at the trial tending to prove that the said Foster was not qualified to perform the operation by reason of a want of skill and experience, yet it did not appear that he had been requested so to do by the trustee before the appellee was employed. Did this constitute a fatal variance between the allegation and proof? It

appears that the case was tried upon its merits by the parties, without regard to the question of a demand upon and a refusal by the said Foster to attend the case, nor do counsel attach any importance to it in argument here.    Section 658, R. S. 1881, provides that " No judgment shall be stayed or reversed, in whole or in part, by the Supreme Court, for any defect in form, variance, or imperfections contained in the record, pleadings, process, entries, returns, or other proceedings therein, which by law might be amended by the court below, but such defects shall be deemed to be amended in the Supreme Court; nor shall any judgment be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below."    The purpose of this statute is unmistakable, and in applying it to a case like this it is not necessary to extend its spirit beyond its letter.    Taking it to mean exactly what it says, forms, variance and imperfections in the pleadings will be disregarded when they might be amended in the court below ; neither will a judgment be reversed if the cause has been fairly tried and determined in the court below.    See *Watt* v. *Pittman*, 125 Ind. 168 ; *Buchanan* v. *State, ex rel.*, 106 Ind. 251 ; *Daniels* v. *McGinnis*, 97 Ind. 549 ; *Gardner* v. *Haney*, 86 Ind. 17 ; *Waltz* v. *Waltz*, 84 Ind. 403 ; *Campbell* v. *Nebeker*, 58 Ind. 446.

The purpose of the appellee in bringing this suit was to recover money which he claimed was due him from the appellant for services rendered.    The material question, therefore, was, did such indebtedness exist ?  The mere fact that the trustee did not request the county physician to perform the operation required was, under the circumstances, wholly unimportant.

The law, looking through the shadow to the substance, required no such useless formality.    It was shown at the trial that such physician had no experience as a surgeon ; that the operation to be performed required great skill, which he did not possess.    If the trustee, having knowledge of these facts,

had requested him to perform the operation, and he had consented to do so, the trustee would not have been justified in recommending or requiring the pauper to submit to it. Paupers, by reason of their unfortunate condition, do not, when suffering from disease, become the subjects for experiment and practice upon the part of tyros in medicine and surgery. The law is more generous than this. This is plainly manifested by section 5764, R. S. 1881, which, among other things, provides as follows: "It is hereby specially made the duty of such board to contract with one or more skilful physicians, having knowledge of surgery, to attend upon all prisoners confined in jail, or paupers in the county asylum." Would the board discharge this statutory obligation by employing a person who was unskilled in either medicine or surgery? Under the circumstances, as they appear in the record, it was unnecessary for the plaintiff below to allege or prove that the county physician refused to perform an operation that he could not do by reason of his want of knowledge and skill. The theory of the law is that in cases where a demand or request is necessary before a cause of action accrues, it is upon the supposition that the person upon whom the demand or request is made has the capacity or ability to perform. The learned judge who presided at the trial evidently took this view of the case in giving judgment for the appellee.

Section 6069, R. S. 1881, makes it the duty of counties, as such, to "relieve and support all poor and indigent persons lawfully settled therein." Section 6066 provides that "The township trustees of the several civil townships of the State shall be the 'overseers of the poor' within their respective townships." Section 6071 provides that the "overseers of the poor" shall have the oversight and care of all poor persons in their respective townships as long as they remain a county charge, and "shall see that they are properly relieved and taken care of." Thus it will be seen that paupers are a county charge; that a township trustee, as an

" overseer of the poor," is required to " care for and relieve " the paupers in his township. He is, for this purpose, an agent of the county. Section 5764 provides that the board of commissioners *may* contract with one or more physicians " to attend the poor generally ; " that when they do this no one has authority to employ others for this purpose. This section, however, is qualified by the following proviso : " Provided, that this section shall not be·so construed as to prevent overseers of the poor, or any one of them, in townships not otherwise provided for, from employing such medical or surgical services as paupers within his or their jurisdiction may require." It is manifestly the policy of our poor laws to properly and adequately care for and relieve the distress of those who are so unfortunate as to become paupers. It is the duty of the properly constituted authorities to see that this is done without any false ideas of economy upon the one hand or a needless extravagance upon the other. If a pauper is sick, it is the duty of the township trustee to see that he has a competent physician to attend him. If a competent physician has been contracted with by the county for this purpose, then he should be called. If surgery is required, then a competent surgeon should be called. If none has been provided by the county, then it is the duty of the township trustee to select and employ one to perform the needed service. Will it be contended that the board had made a proper and adequate provision for the needs and wants of the pauper in this case ? He was in a critical condition, and his life depended upon the immediate attention of a skilled surgeon. The trustee, at the trial, among other things, testified as follows : " I had been notified that he was in a critical condition, and should be seen to by the township authorities. I had been acquainted with him and his mother nearly all my life. I knew her to be a lady of respectability and him to be a man of respectability. I found him in a dreadful condition. His leg was as large as my head. I was requested by the citizens of the community to

have his leg amputated." There is. no good reason why counties, as public corporations, should not faithfully discharge the obligations imposed upon them as well as individuals. When they employ incompetent persons to perform important services they do not do their duty. A failure upon their part to do their duty does not justify them in refusing to recognize those who do.

The mere fact that a board of commissioners employs physicians to attend the poor of a county will not operate as a limitation upon the power of a township trustee to employ others in cases of emergencies. *Board, etc., v. Osburn*, 4 Ind. App. 590; *Washburn v. Board, etc.*, 104 Ind. 321; *Board, etc., v. Ritter*, 90 Ind. 362; *Board, etc., v. Seaton*, 90 Ind. 158; *Conner v. Board, etc.*, 57 Ind. 15; *Morgan County v. Seaton*, 122 Ind. 521. The law upon this point is well and tersely stated by CRUMPACKER, J., in *Board, etc., v. Osburn, supra*, in the following words: "There is but one power to employ medical attendance upon the poor, and when that is exercised by the board of commissioners the trustees are without authority respecting it. But in the event the physician employed by the board of commissioners abandons the contract or refuses to perform it, or is at such a distance that his attendance can not be readily procured and an emergency exists, it is equivalent to no provision by the county, and the trustee is authorized to act. * * Upon the same principle, if the county physician lacked the skill and experience necessary to render reasonably efficient services in any case, and the dictates of humanity seemed to require it, the trustee would be authorized to employ special medical assistance. Section 5764, R. S. 1881, contemplates the employment by the county of reasonably skilful physicians who are conveniently accessible, and if, for any reason, there is no such physician to treat a given case, the trustee may employ one."

"The question as to the necessities of persons relieved is a matter for the determination of the trustee, and, in the ab-

sence of fraud or collusion, his determination is conclusive." *Board, etc.,* v. *Seaton, supra* See, also, *Board, etc.,* v. *Holman,* 34 Ind. 256. As to whether a township is not already provided with physicians is a question of fact. *Board, etc.,* v. *Boynton,* 30 Ind. 359. As to the relative duties of a trustee and a board of commissioners, see *Robbins* v. *Board, etc.,* 91 Ind. 537; *Board, etc.,* v. *Seaton, supra,* and *Washburn* v. *Board, etc., supra.* In this case the trustee was justified in employing a skillful surgeon to perform the required operation. The work was well done, and the charges therefor reasonable, and should be paid.

The judgment is affirmed, with costs.

REINHARD, J., was absent.

Filed Dec. 13, 1892.