The Board of Commissioners of Adams County *v*. Cole.

No. 886.

## The Board of Commissioners of Adams County *v*. Cole.

Physician.—*Practicing Without License.—Emergency.—Compensation. —Medicine and Surgery.*—A physician may recover for services rendered in a county where he has not procured license to practice, if the services are rendered under a pressing emergency and urgent necessity, such as would not admit of the delay necessary to procure the proper license. But for such services as are rendered after he has ample time to procure a license, he is entitled to no compensation. The right to recover, in such a case, is not to be extended beyond the necessities of the actual emergency.

From the Adams Circuit Court.

*R. K. Erwin* and *J. F. Mann*, for appellant.
*P. G. Hooper* and *E. G. Coverdale*, for appellee.

Gavin, J.—The appellee, in his complaint, says that at the time at which the services for which he demands payment were made he was a physician and surgeon, residing at Sharres Crossing, in Mercer county, in the State of Ohio; that he was called upon to go to the relief of one John Long, a poor person, living in Blue Creek township, in Adams county, in the State of Indiana; that the said Long was suffering from a broken leg; that it was necessary to amputate said leg as soon as it could be done, in order to save the life of the said Long; that appellee arrived at the house of said Long about dark on the evening of July 23, 1886; that the attending physician had caused appellee to be sent for on account of his particular skill as a surgeon, in consultation with said attending physician; that it was much nearer to the residence of appellee than to that of any other competent surgeon who had the instruments and skill necessary to perform said amputation; that it was a distance of six-

teen miles from where the said Long lived to the city of Decatur, the county seat of said county of Adams; that the appellee was not in the habit of practicing medicine and surgery in said county of Adams, and had no license authorizing him to practice medicine and surgery in said county, and did not have time to go to the clerk's office in said county to procure such license without endangering the life of said Long; that there was a pressing emergency and an urgent necessity to amputate the said leg as soon as it could be done, in order to save the life of said Long; that said Long was then, and has ever since been, a poor person and unable to pay for said services; that the said board of commissioners had not employed any competent physician and surgeon to care for the poor of said Blue Creek township at the time said services were rendered; that the trustee of said township instructed appellee to perform said operation and care for said Long, and what was right in the premises he would do; that appellee did amputate the leg of said Long on the 24th day of July, 1886, and that it was reasonably worth fifty dollars to perform said operation; that appellee did dress and care for the said leg thereafter, making five trips therefor, each reasonably worth ten dollars; that said township trustee refused to certify appellee's bill for said services, and that said appellant, board of commissioners, refused to allow the same at their September term, 1886.

A demurrer to this complaint was overruled.

An answer was then filed, consisting of a general denial and several special pleas. On the overruling of a demurrer to the third and fourth paragraphs of the answer, a reply was filed in general denial.

The cause was then submitted for trial to a jury, which returned a verdict for appellee in the sum of one hundred and twenty-five dollars.

The errors assigned question the sufficiency of the complaint and the correctness of certain instructions. Appellee's right to recover is not controverted, unless forbidden by the provisions of section 7322, R. S. 1894. See *Board, etc.*, v. *Lomax*, 5 Ind. App. 567, 32 N. E. Rep. 800.

Counsel for appellant, however, argue very earnestly that the complaint is insufficient, inasmuch as it shows that appellee had no license to practice medicine in the county of Adams, as required by the act approved April 11, 1885, regulating the practice of medicine and surgery in this State. R. S. 1894, sections 7318–7323.

Counsel for appellee, on the other hand, gravely contend that because the appellee was not in the habit of practicing his profession in the county of Adams, therefore the amputation in this case, and the visits and dressing of the wound from July 24 to August 12, 1886, did not amount to a practicing of medicine and surgery in that county, in the sense contemplated by the statute.

If this contention were correct, the statute would be little more than a dead letter. The practice of medicine and surgery consists in the application of science, skill and experience to the cure or alleviation of the ailments of the human body; and whether a physician exercises his skill upon one patient or upon a greater number, he is in each case engaged in the practice of his profession.

This statute requires every physician or surgeon, desiring to practice his profession in this State, to procure a license therefor, and section 7322 enacts, in so many words, that "No cause of action shall lie in favor of any person for services as physician, surgeon, or obstetrician who had not, prior to the rendition of such services, procured a license to practice as herein provided for."

This statute has been upheld by several decisions of the Supreme Court. *Eastman* v. *State*, 109 Ind. 278;

*Orr* v. *Meek, Admr.*, 111 Ind. 40; *State, ex rel.*, v. *Green*, 112 Ind. 462; *Benham* v. *State*, 116 Ind. 112.

According, then, to the letter of the law, strictly and literally interpreted, the appellee could recover nothing.

Courts are not, however, always required to give full force to the exact letter of the law, but are oftentimes permitted, nay, more, required, to relax somewhat the rigor of an exact compliance. *Schmidt* v. *State*, 78 Ind. 41; *City of Evansville* v. *Summers*, 108 Ind. 189.

In *Parish* v. *Foss*, 75 Ga. 439, a recovery was allowed for services rendered without registration, where the physician registered as soon as he could.

So far as the amputation itself is concerned, the complaint shows that it was sixteen miles to the county seat, and that the appellee did not have time to go to the clerk's office to procure a license without endangering the life of the patient; "that there was a pressing emergency and an urgent necessity to amputate the said leg as soon as it could be done, in order to save the life of the said Long." This is, we think, one of those exceptions contemplated in the case of *Orr* v. *Meek, Admr., supra*, where the court said: "It may be that there are cases where the courts would hold that the statute does not apply in its full rigor, as where there is an emergency demanding prompt action," etc.

To hold that appellee's conduct, thus far, was within the inhibition of the statute, would be the extreme of inhumanity.

This does not, of course, justify the appellee in continuing his attendance upon his patient day after day without procuring a license for the practice of his profession in Adams county, but it does show that he was entitled to some relief; and the complaint must, therefore, be held good.

Among the instructions to the jury complained of is

the following: "There is a statute of this State requiring a physician to procure a license to practice medicine and surgery before he can engage in the practice within the State, or collect a claim for services rendered without having a license. This statute, however, is not to be applied within the strictness of the letter in every case; for instance, if a physician, competent and qualified, from another State or county, were called on a professional visit for consultation, or the call is made because of some special skill or ability of the physician in a particular branch of his profession, or there was an existing emergency for the attendance of such physician in order to save life, and, under such circumstances, the physician acted without procuring a license, such physician would be entitled to recover for his services thus rendered, notwithstanding he had no license, and the law would aid him in making such collection."

We are satisfied that by this charge the learned judge gave to the jury altogether too wide a latitude in the interpretation of the law. It is the duty of the courts to uphold, not to weaken, the acts of the Legislature, when such acts are not in conflict with the constitution. But to sustain this instruction would be to break down a wise statute intended to protect the people of the State against quacks and other irresponsible, incompetent physicians. It is better that competent physicians should suffer some inconveniences than that the door should be opened wide for the incompetent.

If a physician may safely practice his profession without a license, because some one, wise or unwise, judges him to have special qualifications for the treatment of certain ailments, and "the call is made because of some special skill or ability of the physician in a particular branch of his profession," then there will remain few practitioners in all the land who may not utterly disregard

the provisions of the law. All that would be necessary for him to show would be that he was called to visit his patient "because of some special skill or ability" in the treatment of some given infirmity; and this he could nearly always do, for the very reason for his call was that his patient believed him to be possessed of such special skill and ability.

The law does not require what is unreasonable or impossible, and we think that the appellee was entitled to compensation for the amputation, even though he did not have a license, if rendered in the emergency alleged; but he was entitled to no compensation for his after services, for which there was ample time to procure a license as required by law. The right to recover is not to be extended beyond the necessities of the actual emergency. *People* v. *Lee Wah*, 71 Cal. 80; *Terre Haute, etc., R. W. Co.* v. *McMurray*, 98 Ind. 358; *Toledo, etc., R. W. Co.* v. *Mylott*, 6 Ind. App. 438, 33 N. E. Rep. 135.

With the views which we have expressed as to the law applicable to this case, the instruction was erroneous under any evidence admissible under the issues. The absence of the evidence does not, therefore, make the error unavailable. Thornton on Juries, section 203; *Rapp* v. *Kester*, 125 Ind. 79.

The judgment is reversed, and the cause remanded, with instructions to grant a new trial, and for further proceedings in accordance with this opinion.

Filed March 13, 1894.