## SAILS *et al.* v. MILLER *et al.*, *Appellants.*

**Principal and Agent:** AUTHORITY OF AGENT. The evidence in this case examined and held that the agent of the plaintiff did not exceed his authority in turning over his principal's goods to secure the debt of one of the defendants.

*Appeal from Wright Circuit Court.*—HON. THOS. H. MUSICK, Special Judge.

REVERSED AND REMANDED.

*Boyd & Delaney* and *Boggess & Moore* for appellants.

The action of E. B. Giffen in turning over the goods and making the bill of sale is binding on Sails & Son. He was a general agent for a particular purpose and was clothed with apparent authority to do such acts as he undertook to and did do in this case, and even if private instructions were given him as to the terms of his settlement and limiting his powers they are not binding on appellants, who dealt with him in ignorance of such instructions. Story Ag., secs. 17, 19, 73, 127, 227, and note 2, sec. 127; *Anderson v. Coonley*, 21 Wend. 279; *Johnson v. Jones*, 4 Barb. 369; *Bryant v. Moore*, 26 Me. 84; Pars. Cont. 41 and note *aa.*

*D. H. McIntyre* for respondents.

E. B. Giffen was a retail clerk in the store of Sails & Son at the time of the taking of the goods by defendants, and long prior thereto. He had no power to dispose of the goods at wholesale. An agent must act within the scope of his authority. 1 Pars. Cont. (6 Ed.) 42; Ewell's Ev. Agency, 140, sec. 1; *Windsor v. Bank*, 18 Mo. App. 665.

BRACE, J.—This is an action for the recovery of damages for an alleged conversion by the defendants of a stock of goods, wares and merchandise, the property of the plaintiffs. The answer was a general denial. On the trial, the defendant demurred to the plaintiffs' evidence. The demurrer was overruled, and the case submitted to the jury on the evidence and the instructions of the court. The jury found for the plaintiffs against defendants Hawk and the Grimes Dry Goods Company in the sum of $3,350, and in favor of the defendant Miller. Judgment was entered in accordance with the verdict against Hawk and the Dry Goods Company, who thereupon filed their motions in arrest and for a new trial, which, being overruled, the plaintiffs entered a *remittitur* of eight hundred dollars, and the said defendants appealed.

The undisputed facts in the case are substantially as follows: In the month of June, 1883, and prior thereto, plaintiffs, who are father and son, were doing business in the town of Mountain Grove, in Wright county. James Sails, the son, had the exclusive control and management of the business. He had in his employ a clerk and salesman by the name of Giffen. Defendant Hawk was the travelling agent and representative of the Grimes Dry Goods Company. About the nineteenth of June, the creditors of the concern commenced pressing for the payment of their claims. On the morning of that day, James Sails left his place of business for Springfield, leaving Giffen in charge. He testifies that before starting, he settled with five of the creditors of the concern whose claims in the aggregate amounted to $1,529, by turning over to them severally goods in bulk to the amount of their respective claims. He says: "I told Giffen I was going away that morning. I told him to look after things. I gave him certain authority to settle with creditors on certain conditions. It was verbal authority. No one but myself and Giffen knew.

of the instructions.   I told Giffen if the creditors came
and would take goods at cost and carriage to satisfy
their claims to let them have them and to confine them
to lines bought of them."

After Sails had left, his creditors continued to
come, and Giffen continued to turn over goods to them
on their claims.   Later in the day, Hawk came to
Mountain Grove, to look after the claims of the Grimes
Dry Goods Company ; came to the store ; found Giffen
in charge, and goods being taken by other creditors
upon their claims ; asked Giffen to protect his claim.
Giffen said he would turn over goods to him to pay the
debt.   Hawk asked him if he had authority to do so.
He said he had.   Hawk said Giffen had better have
Sails wire him authority.   Thereupon Giffen sent a tele-
gram to Sails requesting Sails to wire him authority to
make bill of sale of the goods to the Grimes Dry Goods
Company, and received in answer the following tele-
gram :

" *E. B. Giffen :*—I hereby authorize you to sign.
bill of sale to all the creditors concerned.   You need
not wire me any more, as no other telegram will reach
me.                                        JAMES SAILS."

Thereupon, after the other creditors had removed
the goods turned over to them, an invoice of the
remainder was made, and a bill of sale executed by
Giffen to the dry goods company.   The invoice taken
at cost and carriage amounted to about eighteen hun-
dred dollars.   The next day. a sale of the goods was
effected to the defendant Miller, who made the best
offer for them, at nine hundred and fifty dollars, of which
seven hundred and eighteen dollars was retained by
Hawk in payment of the claim of the dry goods com-
pany and two hundred and thirty-two dollars paid to
another creditor by the direction of Giffen.   Some days
after, Sails returned, expressed dissatisfaction with the
sale to Miller, but, without demand, offer to rescind, or

even expressing dissatisfaction with any of the other contracts made by Giffen, but retaining the benefit derived from all of them, including this one, in the discharge of his legal liabilities, commenced this suit, which resulted in the remarkable verdict stated. Giffen, the agent, died before this action came to trial.

There is no evidence tending to show that either Giffen or any of the defendants were not acting in perfect good faith. The only ground upon which the action rests, is that Giffen exceeded his authority ; that the plaintiff only gave him authority to turn over goods to creditors on their demands, if they would take them in the lines bought of them at cost and carriage, but that these goods were turned over regardless of whether they were of such lines and at less than cost and carriage. James Sails, with his clerk, until a short time before he made this trip to Springfield, had been engaged in retailing goods in his general store, but before he left, under stress of circumstances, he changed the general nature of that business, to that of turning over his goods in bulk to his creditors in discharge of the debts of the concern. This was the business he left in charge of his agent ; he gave him express authority to carry it on. The limitations upon his apparent general authority were embraced in the secret instructions stated. When Hawk appeared at plaintiff's place of business, the business that he found being carried on there by plaintiff's agent was that of turning over goods in bulk to creditors on their demands. It was a business that very deeply concerned the interest of his principal ; it was within the line of the business in which he found the agent engaged; that goods should also be turned over on the claim which he represented, Giffen had express, and apparently general, authority to do so, but to remove all doubt upon the subject, his principal, when called upon for additional expression of such

authority, gave it in terms that it would be a fraud upon those who acted upon it in good faith to construe to mean anything else than his sanction to this particular transaction, and to avoid it, because of the secret limitations originally put upon the agent's authority, never, in any way, communicated to the defendant, would be but to consummate that fraud.

On the law and the evidence, the verdict should have been for the defendants, and the court should have so instructed the jury. For error in not doing so, the judgment is reversed and the cause remanded. All concur.