BIGHAM v. THE CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY.

**Railroads:** NURSE FOR INJURED EMPLOYE: CONTRACT OF HIRING: AGENCY: EVIDENCE. In this action to recover on an alleged contract for services rendered in nursing an injured employe of defendant, the evidence bearing upon the alleged contract of hiring is considered (see opinion) and *held* to warrant the finding of the jury that plaintiff was hired by defendant, through its claim-agent and surgeon, as alleged.

*Appeal from Wapello District Court.*—HON. DELL STUART, Judge.

FILED, FEBRUARY 10, 1890.

ACTION to recover for services rendered by plaintiff in nursing and caring for Thomas Bigham, an employe of defendant, who had received personal injuries while in the discharge of his duties, and was taken care of, and a physician provided, by defendant. A judgment upon a verdict was rendered for plaintiff. Defendant appeals.

*Chambers, McElroy & Roberts,* for appellant.

No appearance for appellee.

BECK, J.—I. The plaintiff seeks to recover on two counts in his petition,—the *first* upon a contract under which he rendered the services; the *second* upon a

*quantum meruit.* The defendant denies all the allegations of the petition.

II. One Hensey testified as follows: "I am special agent of the defendant, and have been for about twenty-two years. I have charge of the claim department of the road; and, in connection with personal injuries, I have charge of the doctors on the line, to the extent of appointing them, and giving general directions as to injured employes. I know Dr. Pangburn, of Perry, Iowa, and Dr. Kibby, who lived, while I knew him, at Marion, Iowa. They were both acting as surgeons for defendant in 1882 and 1883. Their duties, as company surgeons, were to attend injured employes or passengers when directed so to do by any one authorized to direct them. In case of severe injury, when one or more nurses were necessary, I would give directions in reference to the employment. The surgeon had no authority to employ nurses without first obtaining my consent. I remember of the case of Thomas Bigham. He was under the medical care of Drs. Kibby and Pangburn, most of the time attended by Dr. Pangburn, the local surgeon. They had no general authority to employ nurses. They reported to me that they would require two nurses for some time. I directed that they should be employed. They employed and retained two for some time, then dispensed with the services of one, and kept the other for some period longer. The only persons the doctors reported to me as having been employed were L. J. Russell, G. S. Martin and James Thomas. I did not authorize Drs. Kibby and Pangburn, or either of them, to employ Charles Bigham as a nurse."

It will be observed that Mr. Hensey does not testify that special authority indicating the nurse was required to authorize his employment, but that the surgeon had special authority to employ two nurses. The last sentence, therefore, does not show the want of authority to employ plaintiff. It must be read in connection with all the evidence of the witness.

Dr. Pangburn, referred to in the foregoing evidence of Mr. Hensey, testified as follows: "I have been a practicing physician twenty-three years, of which nineteen years was at Perry. I first saw Thomas about twenty minutes after he was injured, and saw him three or four times every day from that on. I attended him very closely. Lewis Russell was the first nurse employed. Then there was an assistant, Martin, employed. There were two nurses, at first, which were employed. One of them, Martin, was discharged in about twenty days, and then Lewis Russell alone continued as the only regular employed nurse. Afterwards Russell was discharged, and a man by the name of Thomas put in his place. As stated, there were at first two regular employed nurses,—Russell and Martin. They both continued for about twenty days, and then I discharged Martin, and retained Russell. Charles Bigham came there after his mother had gone home—whether by my request, or by the request of his brother and mother, I cannot say. I don't know as I ever wrote him a letter. I might have written a letter for his brother and his mother, at their request. I could tell you the contents of it, if I wrote one. I never wrote a letter to him in my life stating any amount of wages. I never made any statement to him in regard to the matter in the world. I am positive of it. I had no authority whatever, from any one, to make such a statement."

The plaintiff, Charles S. Bigham, testified as follows: "In January and February, 1883, I was nursing Thomas J. Bigham at Perry, Iowa. I went in response to a letter I received from Perry, Iowa, signed S. Pangburn, M. D. The letter is lost. I showed the letter to my brother. I first saw Dr. Pangburn at Mr. Morgan's house, at Perry, between December 14 and 20, 1882, and saw him daily, after that, for five months while he was attending my brother. I also saw Dr. Kibby, of Marion, there, two or three times. When I came there, two attendants were waiting on my brother,—George

Martin and Lewis Russell. I was there four or five days, when Martin was discharged, and I took his place. I commenced nursing about the twentieth of December. Thomas had both of his legs in boxes, and couldn't move, and there had to be two men with him all the time, to take care of his legs. He laid right on his back, like he was nailed to a cross, for about five months. James Thomas was a nurse during the last part of the time. He left in the last part of March, or the first part of April."

William Bigham testifies in the following language: " My age is thirty years, residence, Ottumwa, and have been a brakeman for nine years. I went down to Perry, Iowa, on December 27, to see my brother Thomas, after he was hurt. He was lying there with his legs mashed pretty nearly off of him. He had both legs in a box. Charles was there, attending on him. Charles showed me a letter, signed S. Pangburn, M. D., at the bottom of it.

" It read :

" ' *Charles Bigham, Ottumwa:*

" ' You come up to Perry, at once, to attend on your brother, and you will get $1.50 for every day you are here, for your services.

" 'S. PANGBURN, M. D.'

"I saw that letter on the night of December 27, 1882. At that time Tom looked like he had both legs mashed off, and that he would have to have both of them taken off, and looked like he would live about a week. His legs were all to pieces. There was no other nurses there at the time except Charles. He was right there all the time, aside of Tom, nursing and attending to him. I stayed there until about ten o'clock the next morning. During all that time Charles was doing something about Tom. He kept up the fires. I was there once after that, in June. When Tom came home, in May, 1883, his condition was bad. He was on a pair of crutches, and used them for two or three months after he came home."
Charles S. and William Bigham are brothers of the

injured man. There was other evidence tending to show the necessity for plaintiff's services as a nurse.

III.   It cannot be doubted that this evidence tends to prove the authority of Hensey to authorize the employment of nurses, and that he did confer special authority upon Dr. Pangburn to employ two nurses, and he, pursuant thereto, did employ plaintiff. It cannot be said that the verdict for plaintiff is not sufficiently supported by this evidence. An instruction properly directed the attention of the jury to it.

IV.   The testimony shows that the assistant superintendent was present while plaintiff was rendering the services for which the action is brought, and probably some other evidence shows his knowledge of the treatment of the injured man. The court below directed the jury that if the assistant superintendent had general supervising authority over the defendant's interest, he possessed authority to employ nurses, and that unless he had such authority, and did employ plaintiff, or authorized his employment, what he said or did should not be considered. We think the instruction is correct. But counsel say there is no evidence as to the authority of the assistant superintendent. We think otherwise.

V.   Other complaints as to the instructions and evidence are based mainly on the view that the evidence fails to show that defendant was employed by contract But, as we have seen, the evidence sufficiently supports the conclusion that plaintiff was employed by defendant through its agents. The jury were authorized so to find, and, we will presume, based their verdict upon such finding. The instruction relating to the right of plaintiff to recover upon the *quantum meruit* cannot, and the evidence admitted thereto could not, have worked prejudice to defendant. Objection thereto need not, therefore, be considered. It is our conclusion that the judgment of the district court ought to be

                                                        AFFIRMED.