McDONALD v. NEW YORK CENTRAL RAILROAD CO.

RAILROADS—LIABILITY OF RAILROAD COMPANY FOR NURSE'S SERVICES ENGAGED BY LOCAL SURGEON.

In an action by a nurse against a railroad company for six weeks' services in caring for a man injured by defendant's train, where defendant contended that plaintiff was employed to render first aid only and that when the emergency passed her employment ceased, and also that the defendant's local surgeon, who employed plaintiff, was without authority to employ her for a longer period than the existence of the emergency, a judgment in favor of plaintiff is affirmed by a divided court.

On liability of railroad company for services of nurse employed by physician, see note in 20 L. R. A. 697.

On liability of railroad company for one employed by physician for company, see note in L. R. A. 1918F, 66, 67.

Error to Kent; Brown (William B.), J.    Submitted January 22, 1924.    (Docket No. 100.)    Decided June 18, 1924.

Assumpsit in justice's court by Margaret McDonald against the New York Central Railroad Company for services rendered.    There was judgment for plaintiff, and defendant appealed to the circuit court.    Judgment for plaintiff.    Defendant brings error.    Affirmed by an equally divided court.

*Knappen, Uhl & Bryant,* for appellant.

*Smedley, Linsey & Shivel,* for appellee.

SHARPE, J.    On the morning of July 9, 1921, one Peterson, while driving an automobile, sustained injuries in a collision with one of defendant's trains at a road crossing in the village of Lamar, a few miles distant from Grand Rapids.    One of defendant's employees, by telephone, notified Dr. Rolland F. Webb, its local surgeon at Grand Rapids.    The doctor testified:

"I at once ordered the ambulance from Butterworth hospital to go out and bring the man in and on my order the man was brought into Butterworth hospital. * * * He was mostly unconscious when I first saw him.    He may have been conscious for a time.    I started to take care of him in pursuance with my arrangements with the New York Central.    I believed he needed the attention of a special nurse and I asked Miss Gill, superintendent of nurses, to put a special nurse on the job.    Miss McDonald responded to the request that I made.    She is a competent nurse and continued on the job for some time and rendered competent and efficient service.    I think that it was a case that needed the attention of a nurse throughout the time that she was on the job."

The doctor treated Peterson during the time he was in the hospital without any arrangement with him as

to compensation.    He further testified that on the day following the injury he told plaintiff "I had no authority to call her for the railroad company; that she would have to look to the man for her pay," and that "She raised no objection."    He assumed that he "did have authority to hire her for the first 24 hours," and that he had authority to "send a man to the hospital" "under those conditions."

Plaintiff denied that Dr. Webb told her she would have to look to the man for her pay.    She testified: "I was looking for my pay to the railroad company;" that after six weeks of service she spoke about getting her pay to Dr. Webb and "he said he would talk with Mr. Peterson about it;" that when the doctor did so Peterson said, "Doctor, you put this nurse on the case and you will have to see that she is paid."

Plaintiff here seeks to recover for the service rendered for the six weeks.    The amount is not in dispute.    The defendant put in evidence the contract between it and the doctor and a pamphlet of "Suggestions and Instructions to Company Surgeons." Its motion for a directed verdict was denied, and the case submitted to the jury, who found for the plaintiff in the sum of $316.89.    Defendant reviews the judgment entered thereon by writ of error.

The contract contained the following:

"*Third:* The said doctor, accepting the appointment as such local surgeon agrees that he will, during his appointment, attend attentatively and professionally at the place of his residence and at a reasonable distance therefrom any and all persons injured in any way in connection with the operation or business of said rail................company, attending said persons as long as they may need attendance and furnishing all dressings that may be needed except where patients are cared for at hospitals."

Among the suggestions and instructions above referred to were:

"No. 6. When trespassers are injured, after rendering first aid, they should be sent to their homes, if at place of accident, or placed in charge of the local county, city or village authorities.

"No. 7. No bills for private rooms in hospital, for special nurses, medicines, or appliances, etc., will be assumed by the company, unless especially authorized by the chief claim agent."

On Dr. Webb's being informed of the injury sustained by Peterson (it having occurred "in connection with the operation" of the railroad), it was his duty, under his contract, to "attend attentatively and professionally" to the needs of Peterson and render him such professional service as his condition required. The authority conferred on him and the duties imposed upon him under the contract were of a special nature. It cannot be said that any general agency was created by it.

The business conducted by the defendant is a dangerous one. Accidents, not only to employees, but to passengers and travelers upon the highways crossing its line of road, are not infrequent. No legal obligation rests upon it to care for persons injured by its trains, as was Peterson. Entering into this contract with the doctor was, however, the assumption of a moral obligation resting upon it to do what was immediately necessary to save life or alleviate pain and suffering when an accident so occurred. The obligation thus assumed had been fully complied with when the exigency which gave rise to it had passed. The extent to which the defendant should go in so providing was a matter for it to decide. It provided in the contract with the doctor for furnishing "first aid," for caring for the person injured until opportunity was afforded him or his relatives or friends or, if none of these were at hand, the public authorities to take charge and do what was further needed. No obligation, even of a moral nature, rested on it to do

more than this. The doctor under his contract was not required to do more.

Plaintiff's right to recover must rest upon the implied or apparent authority which the doctor had to obligate the defendant to pay for her services. She had no knowledge of the contract or its terms. She had no right to assume that the defendant, by rendering "first aid" to Peterson in the emergency created by the accident, intended to obligate itself to care for him and pay the expenses incident thereto until he should fully recover. When the doctor took charge of the injured man, she had a right to assume that he had the authority to bind the company for which he was acting to pay the expense incident to those things which a doctor would ordinarily do under the circumstances. She was sent for at his request. She found the injured man under the influence of an anæsthetic. The doctor testified that the service she then rendered was necessary. But, when the emergency had passed, when Peterson had become conscious and was in a condition to provide for himself or, if unable to do so, when the public authorities might have been appealed to, the apparent authority of the doctor to bind the company for such service no longer existed. His authority expired with the emergency. The duty then devolved on the doctor and the nurse and the injured man to make suitable arrangements for such further aid as he desired and needed. The lack of apparent authority was evident, we think, when we bear in mind the purpose or object sought to be accomplished by the employment of the doctor by the defendant. No person could have, or at least should have, understood from the fact that the defendant employed a local doctor as its surgeon that it intended to provide, free of charge, the services of the surgeon and such nurses and other expenditures as were necessary in caring for a person injured in the operation

of its train, as was Mr. Peterson, during the entire period of his confinement. If authority to hire a nurse was so apparent as to charge the defendant with payment for her services, the same authority would obligate it to pay any other necessary expense incident to his care and treatment while confined in the hospital or other place to which he might have been removed.

The doctrine of apparent authority cannot be so far extended. In the absence of proof that the defendant knowingly permitted the doctor to exercise such enlarged powers, we feel constrained to hold that the plaintiff had no right to rely on any such implied or apparent authority, and that, except for the first 24 hours of service by her, during which time the doctor was administering "first aid" treatment to the injured man, she has no right of recovery. The conclusion reached is, we think, supported by the great weight of authority. In fact, our attention has not been called to any case in which liability has been sustained under circumstances such as are here presented.

Plaintiff's counsel rely on *Austrian & Co.* v. *Springer,* 94 Mich. 343 (34 Am. St. Rep. 350). This is a leading case in this State on the question of agency. It involved the authority of an agent, sent out by a manufacturer to solicit orders, to bind his employer by an acceptance of the order secured. It was held that "parties dealing with an agent have a right to presume that his agency is general, and not limited;" that "the principal is bound to third persons, acting in ignorance of any limitations, by the apparent authority given, and not by the express authority." It was, however, further said, in speaking of the powers of an agent:

"Among those attributes is *the power to do all that is usual or necessary to accomplish the object for which the agency was created.*"

This clearly indicates, as we have attempted to point out, the distinction between an agent who has apparently a general authority to act in relation to the subject-matter of the contract and one whose authority is necessarily limited by the purpose for which the agency is created.

In *Vandalia R. Co.* v. *Bryan*, 60 Ind. App. 223 (110 N. E. 218), the services, for which recovery was permitted, were performed in an emergency. This fact was much stressed by the court in its opinion.

The reasoning in the following cases, cited by defendant's counsel, is in harmony with the views we have expressed. *Burke* v. *Railway Co.*, 114 Mich. 685; *Holmes* v. *McAllister*, 123 Mich. 493 (48 L. R. A. 396); *Mayberry* v. *Railroad Co.*, 75 Mo. 492; *St. Louis, etc., R. Co.* v. *Hoover*, 53 Ark. 377 (13 S. W. 1092); *Bushnell* v. *Railway Co.*, 69 Iowa, 620 (29 N. W. 753); *Southern R. Co.* v. *Grant*, 136 Ga. 303 (71 S. E. 422, Ann. Cas. 1912C, 472). See, also, 1 Mechem on Agency (2d Ed.), § 720 *et seq.;* L. R. A. 1918F, 66-68, note.

The judgment should be reversed, with costs to appellant, and a new trial granted.

Clark, C. J., and Steere and Fellows, JJ., concurred with Sharpe, J.

Bird, J.   Mr. Justice Sharpe has reached the conclusion that the judgment in this case should be reversed.   I think it should be affirmed.

Margaret McDonald was a trained nurse in Butterworth hospital, in the city of Grand Rapids. She had known Dr. Webb for several years. She knew he was employed as surgeon for the defendant railway. She was called upon by the director of nurses to take charge of a railroad accident case for Dr. Webb. She attended the case for six weeks, believing

defendant railway would pay her. When she had served six weeks she asked for her pay, and then learned for the first time that Dr. Webb had no express authority to employ her, except for *first aid,* which he construed to be 24 hours.

This suit was begun to enforce payment. Dr. Webb admitted on the trial that he employed plaintiff, and that he had authority to employ a nurse for first aid, if necessary, but for no longer period. He stated that a nurse was necessary in Mr. Peterson's case. He further stated that he advised plaintiff of the limitation of his authority, but plaintiff denied this. The trial court left this question of veracity to the jury and also the question of Dr. Webb's apparent authority to employ plaintiff for the six weeks' period.

The testimony of Dr. Webb authorized the jury to find that he had express authority to employ plaintiff for 24 hours. If then Dr. Webb had authority to employ her, and did employ her, there was a valid contract, and that contract would continue in force for six weeks unless Dr. Webb, or someone, informed her of the limitation of the doctor's authority. He testified that he did so inform her. She denied that he did. This then was clearly a question of veracity for the consideration of the jury.

If the contract were a valid one for a day, how was Margaret to know at the end of the 24-hour period that he had no authority to employ her for a longer time? The limitation on the doctor's authority consisted of secret instructions, and she had no way of knowing what they were. The doctor had charge of the case, ordered the injured man taken to the hospital, was treating him professionally, and all the attending circumstances indicated that the doctor had the authority which he exercised. After plaintiff was legally hired and rendered services for six weeks of 20 hours a day, to permit defendant to escape under

a claim of this character would be to countenance a fraud upon her.

The principal is bound to third persons who have relied thereon in good faith and in ignorance of any limitation or restrictions by the apparent authority he has given to the agent, and not by the actual or express authority where that differs from the apparent; and this, too, whether the agency be a general or a special one.    Mechem on Agency, § 283.

This statement of the rule was approved in the case of *Antrim Iron Co.* v. *Anderson,* 140 Mich. 702 (112 Am. St. Rep. 434), where the question of apparent authority was involved.

In *Austrian & Co.* v. *Springer,* 94 Mich. 343 (34 Am. St. Rep. 350), in discussing the question of apparent authority, it was said:

"The question is not, what was the authority actually given, but what was the plaintiff, in dealing with the agent, justified in believing the authority to be (citing authorities)?    Whatever attributes properly belong to the character bestowed will be presumed to exist, and they cannot be cut off by private instructions of which those who deal with the agent are ignorant. Among those attributes is the power to do all that is usual and necessary to accomplish the object for which the agency was created.    Mechem on Agency, § 347; *Banner Tobacco Co.* v. *Jenison,* 48 Mich. 459."

"Indeed, whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages, and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of his principal the particular act, and such particular act has been performed, the principal is estopped from denying the agent's authority to perform it.    And the principal will not be permitted to prove that the agent's authority was in fact less extensive than that with which he apparently was clothed."    21 R. C. L. p. 856.

It was said in *Howell, Jewett & Co.* v. *Graff, Murray & Co.*, 25 Neb. 130 (41 N. W. 142):

"A special agent who acts within his apparent power will bind his principal by his contracts, even if he has received private instructions which limit his special authority; but if he exceed his apparent power his principal will not be bound."

And it was said in *Sails* v. *Miller*, 98 Mo. 478 (11 S. W. 970), that secret limitations upon the apparent general authority of an agent will not bind one who deals with an agent in the general line of his authority and who knows nothing of such limitation.

An interesting case and one bearing upon the question involved here is *Bigham* v. *Railway Co.*, 79 Iowa, 534 (44 N. W. 805). This case involves the authority of a doctor to employ a nurse, and whether he did employ, and fully sustains the contentions made herein in behalf of plaintiff.

Inasmuch as the jury found that Dr. Webb had the apparent authority to employ, and did employ plaintiff, and did not disclose to her the limitation of his authority, I think the judgment in plaintiff's behalf should be affirmed.

MCDONALD, MOORE, and WIEST, JJ., concurred with BIRD, J.