Filed March 31, 1893.

---

No. 591.

## The Toledo, St. Louis & Kansas City Railroad Company v. Mylott.

RAILROAD.—*Duty of Company to Injured Employe.*—*Power of Conductor to Bind Company for Medical Attendance, Board, etc.*—Where an employe of a railroad company, while in the discharge of his duty as a brakeman, met with a serious accident which demanded immediate attention and care to protect the life of the injured man, the accident occurring at a place remote from the general office of the company, and the conductor being the highest officer of the company present, he has the power to act for the company, where it is the duty of the company to act (and in such emergencies, under the circumstances, it is its duty to act), and may bind the company for the exigencies of the occasion, such as medical attendance, shelter, board, nursing, etc., and the company will be bound therefor until the emergency ceases.

EVIDENCE. — *Declaration of Conductor.* — *Wounded Employe.* — *Arrangements for Care and Attention.*—*Railroad.*—A declaration of a conductor that he would notify the superintendent of the road as to arrangements for care and attention made by him for a wounded employe, being a part of the transaction of such arrangements, is admissible in evidence in an action against the company to recover for such care and attention.

From the Wells Circuit Court.

*S. O. Bayless* and *C. G. Guenther*, for appellant.

*P. G. Hooper, E. G. Coverdale* and *A. L. Sharpe*, for appellee.

GAVIN, J.—Appellee's complaint was in two paragraphs. The first paragraph, as amended, omitting some formal allegations, set forth substantially, that appellant was a railroad corporation, operating a railroad through the city of Decatur, Indiana; that appellee was a boarding-house keeper at that place; that on November 22d, 1887, one William Hoflecker, a brakeman on said appellant's road, while working on his train at Decatur, met with an accident whereby his skull was crushed; that he was removed to appellee's house for care and attention; that the conductor of said train, James Waldron, then and there, requested the appellee to board and care for the injured man in every way necessary, stating that the appellant would pay for the same; that said conductor was the highest officer of said company then present; that there was a pressing emergency requiring that the injured man should have care and attention at once; that Hoflecker was wholly unconscious, had no relatives or friends present to care for him, and no money or means with which to pay for the care he needed; that, thereupon, appellee furnished him board and room and care, and boarded his attendants until he was able to be removed, which was worth five dollars per day.

The second paragraph was similar, except the allegations as to want of friends and money are omitted, but it is alleged that the superintendent of the road was immediately notified of the arrangement, and failed to disaffirm it.

The general denial, on behalf of appellant, formed the issues tried, which resulted in a verdict for appellee, with ten special interrogatories answered.

The only questions argued by appellants arise upon the motion for a new trial.

There is but little dispute as to the facts in the case, except as to whether or not the contract was really made by the conductor, who squarely denies making it, while Mylott and his wife both affirm that it was made.

The evidence fairly tends to show, that Decatur was the end of a division on appellant's road, from which a morning passenger train started; that Hoflecker was a brakeman employed on this train, and while engaged in making up his train, met with an accident whereby his skull was crushed, and he was rendered unconscious, which facts are expressly admitted by appellant's counsel in their brief; that he was immediately removed by some of his fellow workmen to the residence and boarding house of the appellee in Decatur, where he had been boarding for a week, and from which he had come just a few minutes before the accident; that his injuries required the removal of several pieces of the skull, and he remained unconscious for four days, and was not able to be removed to his permanent home in the State of Ohio, for about twenty-five days; that he had no relatives in said city of Decatur, and no money or means to pay for necessary attention; that in addition to the services of physicians, he required immediate, constant, and continuous care, day and night, for several days, and almost continuously up to the time of his removal; that the conductor in charge of the train, James Waldron, was not present when the accident happened, and did not direct the removal to appellee's house, but having learned of the accident, went, within twenty or thirty minutes, to appellee's house, where Hoflecker lay unconscious, dismissed one of the two physicians who had been summoned, and sent for the company's regular physician, who took charge of the case, and it being then about time for his train to leave Decatur, Waldron told appellee to take good care of the man and see that he was all right, and the company would be responsible for the expenses; that after directing a fireman and engineer to stay with the injured man, which they did, the conductor left and did not return that day; that, in pursuance of this arrangement, appellee boarded these men and the wounded man, and also cared for the wounded man by waiting upon him

and nursing him night and day, for a portion of the time, this service being necessary; that Hoflecker remained at appellee's house about twenty-five days, being removed to his permanent home in Ohio as soon as he was able to be moved; that Waldron was the highest officer of the company at Decatur, the general offices being at Toledo, about one hundred miles distant; that he had no special authority to make the contract with appellee, nor did he ever notify any of his superior officers that he had made it.

The only errors discussed by appellant's counsel come under two heads of the motion for a new trial, want of evidence and errors of law occurring on the trial.

One position assumed by counsel is that the verdict can not be sustained, because of a want of notification by the conductor to his superior officer, as alleged in the second paragraph of the complaint.

This argument is faulty in that it ignores entirely the existence of the first paragraph of the complaint as amended, which contained no such allegations and the sufficiency of which is unchallenged. It is not necessary that appellee's evidence should sustain both paragraphs of his complaint, but if one is successfully maintained, this will uphold the verdict.

The principal and most important point urged by appellant is that the conductor, not being specially authorized, had no power to bind the company for board, care, and nursing of the injured brakeman.

While they concede that in certain cases of emergency the conductor may, without special authority, bind the company for medical attendance, they insist that there the power ends, and that it can be extended no further than mere medical attendance; they also urge that under the facts of this case no emergency existed, or if it did exist, that the emergency was passed at the time of making the contract alleged.

These are the only propositions which we are called upon to take up on this branch of the case.

The power of the general officers of a railroad company to employ medical attendance for workmen injured in the performance of duty, has been fully considered and affirmed by our Supreme Court in the cases of *Terre Haute, etc., R. R. Co.* v. *McMurray*, 98 Ind. 358; and *Louisville, etc., R. W. Co.* v. *McVay*, 98 Ind. 391.

These cases have been followed and approved in *Terre Haute, etc., R. R. Co.* v. *Brown*, 107 Ind. 336; *Louisville, etc., R. W. Co.* v. *Smith*, 121 Ind. 353; *Cincinnati, etc., R. W. Co.* v. *Davis*, 126 Ind. 99; *Evansville & Richmond R. R. Co.* v. *Freeland*, 4 Ind. App. 207, 30 N. E. Rep. 803; *St. Louis, etc., R. W. Co.* v. *Hoover*, 53 Ark. 377; *Sevier* v. *Birmingham, etc., R. Co.* (Ala.), 48 Am. and Eng. R. R. Cas. 503.

In the notes upon the *Cincinnati, etc., R. W. Co.* v. *Davis*, 44 Am. and Eng. R. R. Cas. 459, is quite an exhaustive collection of the authorities, and while there is some variety of opinion, the weight of authority decidedly favors the doctrine of the Indiana cases upon this proposition.

This authority of the general officers is not limited to procuring medical attendance alone. In the case cited above, *Louisville, etc., R. W. Co.* v. *McVay, supra*, the recovery was for the services of an attendant employed as a nurse.

In *Indianapolis, etc., R. R. Co.* v. *Morris*, 67 Ill. 295, the injured brakeman was taken to appellee's house and cared for, and a recovery for the services was upheld.

A judgment in favor of a hotel keeper for the board, room, and lodging furnished an injured brakeman, and also for the services of an attendant was affirmed by the Supreme Court of Kansas. *Atlantic, etc., R. R. Co.* v. *Reisner*, 18 Kan. 458.

So likewise in *Atchinson, etc., R. R. Co.* v. *Reecher*, 24 Kan. 228, Brewer, Judge, sustains a judgment for the board and care of an injured employe.

In *Bigham* v. *Chicago, etc., R. W. Co.*, 44 N. W. Rep. 805, the recovery was for nursing the injured employe.

The law as established in Indiana goes one step further than most, if not all, of the cases outside of our State, and says that it is not only within the power of the company to provide medical attendance, but it is also its duty to so do in cases of emergency, where it is imperatively demanded.

In *Terre Haute, etc., R. R. Co.* v. *McMurray*, it is said by Judge Elliott: "Humanity and Justice unite in affirming that some one owes him this duty, since to assert the contrary is to affirm that upon no one rests the duty of calling aid that may save life. If we concede the existence of this general duty, then the further search is for the one who in justice owes the duty, and surely, where the question comes between the employer and a stranger, the just rule must be that it rests upon the former."

Again he says: "Of course, this duty could not rest upon the master in ordinary cases, but should rest upon him in extraordinary cases, where immediate medical attendance is imperatively demanded."

Shelter, food, care and attention are as absolutely necessary to a wounded and helpless man as medical attendance. Without these he would as surely die as without a surgeon or physician, and when the injured man is entirely helpless, without means to procure them, has no one, other than his employer, present upon whom the obligation rests to provide them, and no one voluntarily assumes this duty, we can see no reason why the same principle should not govern which justifies and requires the procuring of medical attendance by the company.

It being established that the general officers of the company would have the power under such circumstances to bind the company for the necessary board, care, and attention furnished an employe injured while in the performance of his duty, it follows, under the authorities, that the

conductor also has such authority under certain circumstances.

That the conductor has no such general authority in ordinary cases is conceded, but it is clear that he has such authority in the case of an emergency where an accident occurs remote from the general offices, when he is the highest officer of the company present, and when immediate action is required in order to preserve and protect the life of the injured man. In the face of this emergency, requiring immediate action to preserve human life, the duty devolves upon the company to act, and the conductor stands in the place of the company, clothed with such powers as may be necessary to meet the exigencies of the occasion.

"If, then, the conductor is the highest agent on the ground, and the corporation must and does act, his act is just as much that of the corporation in the particular instance, and circumscribed by the exigencies of the special occasion, as though he were much higher in authority." *Terre Haute, etc., R. R. Co.* v. *McMurray, supra.*

Again in the same case it is said: "If we are right in our conclusion that an emergency may arise which will constitute a conductor, for the time and the emergency, the chief officer of the corporation present, then these cases are strongly in support of our position that he may, in cases of urgent necessity, bind the corporation by contracting with a surgeon. For, once it is conceded that the officer having a right to represent the company is the company, it inevitably follows that his contract is that of the corporation."

In this case it may be said in like manner that the general officers had the power to make the contract sued on, and if an emergency demanding immediate action existed, then the conductor became, for the occasion, clothed with like powers.

In *Louisville, etc., R. W. Co.* v. *Smith, supra,* it is said, with reference to the right of a conductor to employ a surgeon in case of an accident. "He had authority to do what the emergency demanded, in order to preserve his injured fellow-employe from serious harm, but he had no authority to do more." The same principle governs the case in hand.

That an emergency did exist in this case, which called for the exercise of this unusual power by the conductor, seems to us fairly inferrible from the evidence. Here was a brakeman engaged in his work on his train, whose head is crushed so as to render him unconscious for four days, and so as to require the removal of several pieces of the skull; the injured man is remote from any relatives, and without means or money to pay for needed care; immediate and constant care are required for days; the man is absolutely helpless; shelter and food and care must be furnished by some one; they have not been provided simply by his removal to the boarding house where he has been obtaining ordinary board and lodging for a week; its proprietors are strangers to him, and under no legal obligation whatever to render to him the extraordinary services required; the conductor makes the arrangements for him, within twenty or thirty minutes of the occurrence of the accident.

We do not see how it can be reasonably said that the emergency was passed at the time of making this contract, when the man was still wholly unable to care for himself, when there was no one other than his employer present, upon whom rested the duty of caring for him, and when no one else had assumed that duty, for we do not deem his mere reception into appellee's house such an assumption. The immediate necessities of the occasion were unprovided for, until the conductor exercised his power and contracted with appellee. Both the dictates of humanity and the self-interest of the employe would justify the employer or his agent, under such circumstances, in making such provision

for a helpless employe as would supply his immediate necessities, and mitigate injuries for which the employer might be liable.

The case of *Mayberry* v. *Chicago, etc., R. W. Co.*, 75 Mo. 492, does not meet the present case for the reason that there the contract was made by one who was simply employed by the company as a physician. No emergency was shown to exist, nor was he shown to be the highest officer of the company present.

The measure of the recovery is not before us in this case. It is only required for us to decide whether or not the appellee was entitled to recover anything under the evidence. This being all that it is necessary that we should decide, it is all we do pass upon, leaving any further or different questions to be determined when they arise. Whether or not the rule which applies to a corporation such as a railroad company, exercising quasi public functions, applies to private employes, we do not need here to determine, the decision in this case being limited to the facts of this case.

Under the head of errors of law occurring at the trial, a number of causes are set forth in the motion for a new trial.

Complaint is made of the ruling of the court, in sustaining a motion to strike out questions 10 and 11 of the deposition of Waldron. The motion is not made a part of the record by bill of exceptions, or order of the court, as would be necessary in order to present any question to this court on appeal. R. S. 1881, section 650; *Smith* v. *Kyler*, 74 Ind. 575.

Neither can we say what evidence was elicited by questions 10 and 11, for the reason that the questions in the deposition, as it appears in the record, are not numbered.

If we were to assume that the questions and answers set out in the motion for a new trial are the ones referred to, we find these very questions and answers to have been included in the deposition as read upon the trial, and they are also

The Toledo, St. Louis & Kansas City Railroad Company *v.* Mylott.

quoted by counsel for appellant, in their brief, as a part of the evidence given in this cause.

Objection is also made to the following question and answer of Mylott as to Waldron's statement to him.

"*Question.* Tell the jury what he did tell you about notifying the superintendent, about him having notified them.

"*Answer.* He told me he was going to notify them that morning that he got hurt."

We are unable to see that this evidence could, by any possibility, have been injurious to appellant.

It was uncontroverted, that, as a matter of fact, no notice whatever was given by the conductor to any of his superior officers.

This statement was also, manifestly, a part of the same conversation in which the contract of employment was made by the conductor, and was admissible as a part of the transaction, being made with reference to the very matter in which he was then engaged on behalf of appellant.

Instruction No. 7, which appellant's counsel say states the law, invades the province of the jury by hinging the entire case upon a single fact, which was only one out of many from which the jury were to draw their final conclusions, and was, for that reason, properly refused. *Louisville. etc., R. W. Co.* v. *Falvey,* 104 Ind. 409, on page 426.

Having considered all the questions presented by appellant, we find in them no ground for reversal.

The judgment is affirmed, with costs.

Filed January 19, 1893.

## CONCURRING OPINION.

DAVIS, J.—There was evidence on the trial tending to establish the emergency for securing immediate care and attention of the injured servant, and the jury having determined that the emergency existed, this court can not

weigh the evidence on that question. The case is therefore presented for the consideration of this court on the theory, that the brakeman was injured while engaged in the performance of his duties for the appellant, on the train, as expressly admitted by counsel for appellant, and, under the circumstances disclosed by the record, as correctly set out in the opinion; that an urgent necessity existed for the immediate care and attention which was bestowed on the wounded, helpless, and insensible man, by appellee, at the request of the conductor, acting for the company.

If the brakeman had not been engaged in the discharge of his duties at the time he received his injuries, as a matter of course appellant would not, under the circumstances of the case, have been liable.

The liability arose with the emergency existing at the time the conductor of the train, for the company, made the agreement with appellee. It will not do to say that the emergency had ceased because, as soon as the brakeman was injured, he had been removed by employes of the company, or by strangers, to the house of appellee, or that because appellee allowed him to be carried into his house, there was no urgent necessity for the promise then made by conductor, as set out in the opinion. The emergency then existed to act at once in order to obtain necessary care and attention for the unconscious brakeman. It is true the liability of the company ended with the termination of the emergency. The court does not hold that the liability of the appellant extended beyond the emergency. No question is raised as to the extent or amount of the recovery. The only question presented for our consideration is whether appellee was entitled to recover anything. The court does not hold that appellee was entitled to recover for board of others, or for the continued care and nursing of the brakeman beyond the emergency then existing.

I concur in the opinion of the majority of the court.

Filed January 19, 1893.

DISSENTING OPINION.

Ross, J.—I am unable to concur in the opinion of a majority of the court, in this case, for the reason that the facts disclosed by the record do not warrant the court, in my opinion, in the conclusion arrived at.

For the purposes of this opinion, we will take it for granted that the law in this State is settled, that where the facts disclose such an overwhelming emergency as would create a necessity for immediate action in order to save life, or to prevent great suffering, a conductor, employed by a railroad company, has the implied power to bind the employer, in his absence, for necessary medical assistance or nursing, rendered during the existence of such an emergency, to another employe who had sustained an injury. But if the contract therefor was made or the assistance was rendered after the emergency ceased to exist, he had no such power. *Evansville, etc., R. R. Co.* v. *Freeland*, 4 Ind. App. 207; *Louisville, etc., R. W. Co.* v. *Smith*, 121 Ind. 353.

This action was brought by the appellee to recover upon the following account:

"The Toledo, St. Louis & Kansas City Railroad Company to Thomas Mylott, Dr. From November 22d, 1887, to December 17th, 1887, inclusive, twenty-five days boarding and caring for William Hoflecker, and fifty-six days boarding furnished during same time to attendants, in all $125."

The complaint, which is set out in full in the opinion of the majority of the court, alleges specially the circumstances under which said services were rendered, and for that reason I need not restate them.

The evidence discloses the following to be the facts in this case, for there is no conflict in the evidence, except on the question of the contract, and upon that question I accept the appellee's statement as true, viz.: That on the

morning of November 22d, 1887, one William Hoflecker, who was then in the employ of the appellant as a brakeman, was seriously injured by having his skull fractured; that a fireman and switchman, employed by appellant, who were co-employes with said Hoflecker, after he was injured carried him to the house of the appellee, where he had been for eight days, and was at that time, lodging and boarding, and that he called that his home when in Decatur, he being a single man, and his parents residing in the State of Ohio; that his condition was such as to require immediate medical services, which were rendered by one Dr. Freeman; that Hoflecker was a poor man without any means with which to pay for board and nursing; that about half an hour after he had been removed to appellee's house, James A. Waldron, a passenger conductor on appellant's road and in its employ, having heard of the accident which had befallen said brakeman, called at appellee's house and said to appellee "take good care of this man and see that he is all right, and the company will be responsible for the expenses;" that for four days after the injury said Hoflecker was unconscious, and that he did not recover sufficiently so that he could be safely moved from appellee's house until December 17th, 1887; that Decatur was the end of one of the divisions of appellant's railroad; that on the day Hoflecker was injured his grandmother and two cousins came to see him, and that one of the cousins helped take care of him during the time he was at appellee's house. Other persons, also, were in attendance, and helped to care for said injured brakeman.

It is for the board and caring for said Hoflecker, and for the board of those in attendance upon him that this action is prosecuted. Is the appellant liable under these facts?

It will be observed that a railroad company has been held answerable for medical services rendered a fellow-employe, under the employment of a conductor, *only* in such cases as where an emergency existed for immediate

action, and where it was shown that he was the highest officer, in authority, in the railroad's employ, on the ground at the time. *Terre Haute, etc., R. R. Co.* v. *McMurray,* 98 Ind. 358; *Terre Haute, etc., R. R. Co.* v. *Brown,* 107 Ind. 336; *Louisville, etc., R. W. Co.* v. *Smith,* 121 Ind. 353.

We are at once confronted with the question, "What is an emergency?"

It is "an unforeseen occurrence or combination of circumstances which calls for immediate action."

Unless the facts in this case were such as created a necessity for immediate action on the part of the conductor, as the representative of the railroad company, there was no emergency. If there was no emergency requiring the conductor to say to the appellee "take good care of this man and see that he is all right, and the company will be responsible for the expenses," then he could not create an obligation against the company for any care, nursing or board rendered or furnished said injured brakeman, nor for the board furnished his relatives and others while voluntarily waiting upon him.

The power to obligate the principal or master is not an authority vested in him specially by reason of his position as a conductor, in the principal's employ, but it is an implied power conferred upon him by the exigencies of the case requiring some one to act, and if an emergency arises sufficient to create a necessity for immediate action in order to save life, or to prevent or allay great bodily suffering, and he assumes, for the principal, to act in procuring the necessary medical assistance to be rendered during the existence of the emergency, to one injured while in the discharge of his duties in the principal's service, the principal is liable. But if such authority is only to be implied from the exigencies of the case, and that is the law, then it is for the court to say when such exigencies arise as will warrant its assumption.

The Toledo, St. Louis & Kansas City Railroad Company v. Mylott.

In the case of *Evansville & Richmond R. R. Co.* v. *Freeland, supra,* which was a case brought to recover for medical services rendered in amputating the limb of one Maddox, an employe, at the instance of another employe, this court says: "That there was an emergency, and an imperious necessity for the preservation of life and to prevent great bodily suffering at the time appellant's conductor employed appellee to treat said Charles Maddox, which emergency and necessity were concurred in by the local surgeon, who was unable, by reason of the extraordinary service devolved upon him by the injury of so many persons, to give the immediate aid and attention required by the emergency and necessity growing out of the accident; and, reaching the conclusion we have, we do not assume the law to be that the conductor or other subordinate agent has the general authority to employ a surgeon for a sick or wounded servant of the company; but we do hold that, where the conductor in control of the company's train is the highest agent on the ground, he possesses an authority commensurate with an existing and pressing necessity."

It is clearly and decisively settled by the courts of this State that in ordinary cases a master is not bound to furnish medical attendance, but that in extraordinary cases where immediate medical attendance is imperatively demanded, the duty rests upon the master to furnish whatever assistance he reasonably can. But it must be conceded that such an emergency arises as would create a necessity for immediate action *only* when it is shown that it was necessary in order to save life, or to prevent or allay great bodily suffering.

In the case of *The Terre Haute, etc., R. R. Co.* v. *McMurray, supra,* the court, on petition for a rehearing, say: "We did not decide that a corporation was responsible generally for medical or surgical attention given to a sick or wounded servant; on the contrary, we were careful to limit our decision to surgical services rendered upon an

The Toledo, St. Louis & Kansas City Railroad Company *v.* Mylott.

urgent exigency, where immediate attention was demanded to save life or prevent great injury. We held that the liability arose with the emergency, and with it expired. We did hold that where the conductor was the highest representative of the corporation on the ground, and there was an emergency requiring immediate action, he was authorized to employ a surgeon to give such attention as the exigency of the occasion made imperiously necessary; but we did not hold that the conductor had a general authority to employ a surgeon where there was no emergency, or where there was a superior agent on the ground."

In this case the question is, do the facts create such an emergency? I have no hesitancy in saying that they do not. The person injured was a brakeman in the employ of the appellant. He was at the time of the injury, and for some time previous had been, boarding with the appellee, making his home there. When he was injured he was carried to appellee's house, and in about half an hour after the conductor, James A. Waldron, came to appellee's house to see the injured man, and when leaving used the language already quoted with reference to caring for the injured man.

The evidence fails to disclose any refusal on the part of appellee to continue to board the injured man under the contract existing between him and appellee, or any necessity for the promise made by the conductor that the railroad company would pay the expenses. Neither is there any proof that by reason of, or relying upon, this promise made by appellant's conductor, the appellee boarded and cared for said injured brakeman, nor is there any evidence from which it could be inferred that said brakeman was injured while in the discharge of his duties, or even that he was injured on appellant's railroad.

With the record disclosing such serious omissions of evidence necessary to create an emergency, I am unable to conclude that the appellant is liable. Having reached the

conclusion that the appellant owed no obligation to the brakeman to furnish him either with medical attendance or board and nursing, except in case an emergency arose requiring immediate action on its part to save his life, or prevent great suffering, and the evidence in this case showing no such emergency, I think the judgment of the court below should be reversed, and a new trial granted.

Filed January 19, 1893; petition for a rehearing overruled April 28, 1893.

Ross, J., dissents.