P. H. SALTER ET AL., APPELLEES, V. NEBRASKA TELEPHONE COMPANY, APPELLANT.

FILED JUNE 22, 1907.  No. 14,674.

1. **Corporations:** INJURY TO EMPLOYEE: OFFICERS, AUTHORITY OF. When a serious injury requiring immediate medical or surgical services is incurred by the employee of a company engaged in a business dangerous to its employees, and the injury is received at a place distant from the home of the injured party, any general officer of the company then present may engage such medical or surgical treatment and care as the case requires, and bind the company for the reasonable value thereof, without any proof on the part of the party furnishing such treatment and care that such general officer of the company had special authority to make such contract or that such action on his part came within the general scope of his power and duties.

2. ———: ———: ———. In case of serious injury to an employee under the circumstances above set out, if no general officer of the company is present, the highest officer or person highest in authority then present may bind the company for such services as the emergency may demand.

3. ———: ———: ———. While not attempting to formulate any general rule to determine what constitutes emergency treatment for which a company will be liable under employment made by an officer or agent of known limited authority, it ought generally to extend for a time sufficient for the party employed to communicate with the company, and, if it decline to be further responsible, for notice to the proper poor authorities, if the injured party is entitled to public care.

APPEAL from the district court for Madison county: JOHN F. BOYD, JUDGE. *Reversed.*

*Allen & Reed* and *W. W. Morsman,* for appellant.

*Mapes & Hazen* and *John R. Hays, contra.*

DUFFIE, C.

January 1, 1904, Burt Crumb, an employee of the Nebraska Telephone Company, fell from the top of a telephone pole to the frozen earth, fracturing his arm at the elbow to such an extent that the ends of the broken bones protruded through his coat into the earth. He was taken to Hubbard, some 4½ miles distant, and the next morning put on the train and taken to Norfolk, where he was placed in a hospital operated by the plaintiffs. One O. E. Dugan, foreman in charge of the working gang of which Crumb was a member, was in Norfolk at the time, and made arrangements with the plaintiffs for the reception and treatment of Crumb. The evidence discloses that Crumb had received a compound fracture of the elbow joint; that in drawing back the protruding bones previous to his reception by the plaintiffs, some 19 hours after the accident, dirt and other foreign matter, which had been taken into the wound caused by the protruding bones, infected the arm, and this infection spread over the entire system, necessitating a number of operations, among others the removal of the elbow joint, which operation was performed by the plaintiffs on January 16. It further appears that Crumb's condition was such as to require the constant attendance of a nurse and the services of both the plaintiffs to dress his arm, which was necessary from two to three times a day for some time after his reception. There is evidence tending to show that at no time previous to his leaving could Crumb have been moved from the hospital without great danger to his life. Crumb was received by the plaintiffs on January 2, 1904, and discharged on July 28, 1904, This action was commenced against the defendant and appellant to recover the value of the professional services rendered and for board and hospital services, the amount claimed being $918.

The answer admits that Crumb was an employee of the defendant corporation, and was injured so as to become in

need of immediate medical and surgical treatment; avers that Dugan employed the plaintiffs to render such services on January 2, 1904, but that he then informed plaintiffs that defendant would not be responsible or pay plaintiffs for more than the first surgical treatment, and that neither he (Dugan) nor any other employee of defendant had authority to employ plaintiffs and to obligate the defendant for more than the first treatment given Crumb. The answer further offered to let plaintiffs take judgment for the value of the first treatment of said Crumb as specified in the petition, to wit, setting arm $25, with the costs to date of filing the answer.

On the trial the defendant interposed numerous objections to evidence offered by the plaintiffs, which objections were overruled and exceptions duly entered. The defendant offered evidence to show that Dugan had no authority to make any contract on behalf of the company for services rendered to any employee of the company, except for the first treatment given such injured employee; also, that Dugan informed one of the plaintiffs on January 3, 1904, that the defendant would not be responsible for any services other than the first treatment of Burt Crumb; that at a later date another employee of the company informed one of the plaintiffs, when interrogated about payment for services rendered Crumb, that it was a matter to be decided later by the company; and that on another occasion the district manager of the defendant company at Norfolk informed one of the plaintiffs that by the rules of the defendant company it would not hold itself responsible for surgical and medical attendance received by one of its injured employees, except only for the first treatment. An objection to these offers made by the plaintiffs was sustained by the court and defendant's exceptions duly entered. At the conclusion of the testimony the defendant moved the court to direct a verdict for the defendant as to the entire claim of the plaintiffs, except $25 for the first treatment, interest and costs, and the plaintiffs moved for a directed verdict for the entire amount of

plaintiff's demand, with interest and costs. The court sustained the plaintiffs' motion, and in accordance therewith directed a verdict for the plaintiffs for the sum of $971.70. From a judgment entered upon this verdict the defendant has appealed to this court.

It will be unnecessary, as we view the case, to pass upon all the errors assigned by the appellant. While the rule is not uniform there are many cases holding that, where a company is engaged in a business dangerous to its employees, in case of an accident of such serious character that the injured employee stands in need of immediate medical or surgical attendance, the conductor of a train, or the highest officer of the company present at the time, has, from the necessities of the case, authority to represent the company and to bind it by the employment of a surgeon for such immediate medical or surgical services and care as are required. In support of this rule the court, in *Terre Haute & I. R. Co. v. McMurray,* 98 Ind. 358, 49 Am. Rep. 752, said: "An employer does not stand to his servants as a stranger, he owes them a duty. The cases all agree that some duty is owing from the master to the servant, but no case that we have been able to find defines the limits of this duty. Granting the existence of this general duty, and no one will deny that such duty does exist, the inquiry is as to its character and extent. Suppose the axle of a car to break because of a defect, and a brakeman's leg to be mangled by the derailment consequent upon the breaking of the axle, and that he is in imminent danger of bleeding to death unless surgical aid is summoned at once, and suppose the accident to occur at a point where there is no station and when no officer superior to the conductor is present, would not the conductor have authority to call a surgeon? Is there not a duty to the mangled man that some one must discharge? And if there be such a duty, who owes it, the employer or a stranger? Humanity and justice unite in affirming that some one owes him this duty, since to assert the contrary is to affirm that upon no one rests the duty of calling

aid that may save life. If we concede the existence of
this general duty, then the further search is for the one
who in justice owes the duty, and surely, where the question
comes between the employer and a stranger, the just
rule must be that it rests upon the former."

In *Marquette & O. R. Co. v. Taft,* 28 Mich. 289, the yard-
master of the defendant company employed a physician
to amputate a leg and bind up the wounds and bruises
of an employee injured in the service of the company.
The employment by the yardmaster was afterwards rati-
fied by the general superintendent. The company de-
fended upon the ground that it was not shown that either
the yardmaster or the general superintendent acted within
the scope of their authority in employing the surgeon.
Judgment went in favor of the plaintiff in the trial court,
and this judgment was affirmed by the supreme court,
Justices Groves and Campbell voting for a reversal, Cooley
and Christiancy voting for an affirmance. Judges Cooley
and Christiancy appeared to have based their decision
more upon the ground of the ratification of the employ-
ment by the general superintendent, than upon the au-
thority of the yardmaster to make a contract binding
the company in the first instance.

In *Toledo, St. L. & K. C. R. Co. v. Mylott,* 6 Ind. App.
438, a brakeman on the appellant's road met with an acci-
dent by which his skull was crushed. The conductor re-
quested the appellee to board and care for the injured man
in every way necessary, stating that the company would
pay for the same. The conductor was the highest officer
of the company then present. After discussing the right
of a general officer to bind the company by such employ-
ment, the court proceeded to discuss the right of the con-
ductor to do so. We quote from the opinion: "It being
established that the general officers of the company would
have the power under such circumstances to bind the
company for the necessary board, care, and attention
furnished an employee injured while in the performance
of his duty, it follows, under the authorities, that the

conductor also has such authority under certain circumstances. That the conductor has no such general authority in ordinary cases is conceded, but it is clear that he has such authority in the case of an emergency where an accident occurs remote from the general offices, when he is the highest officer of the company present, and when immediate action is required in order to preserve and protect the life of the injured man. In the face of this emergency, requiring immediate action to preserve human life, the duty devolves upon the company to act, and the conductor stands in the place of the company, clothed with such powers as may be necessary to meet the exigencies of the occasion." The supreme court of Indiana, so far as our examination of the authorities has extended, has gone further than any other in adopting the rule that a subordinate officer has authority to bind the company by the employment of physicians and surgeons in case of an emergency, and where no higher officer of the company is present at the time, and these decisions are all to the effect that such employment binds the company only for the first or emergency service. There are numerous cases from other states holding that, where such services are obtained, and where there is direct or inferential evidence of a ratification by some general officer, then the company is bound for all services so rendered.

In *Toledo, W. & W. R. Co. v. Rodrigues*, 47 Ill. 188, the station agent of the company employed the appellant to nurse and take care of one Johnson, an injured employee of the company. He wrote to the general superintendent, making a full statement of all that had been done. The fourth paragraph of the syllabus is in the following words: "Where an employee of a railroad company has received injury, while in the discharge of his duty, and the station agent, in his capacity as such, assumes certain liabilities in his behalf, for nurse and medical attendance, and writes a letter to the general superintendent stating the facts, it is presumed that the general superintendent received such notice, and, in the absence of any instructions

to the contrary, consented, on the part of the railroad company, to assume the liabilities of the station agent for all reasonable charges in this behalf." *Toledo, W. & W. R. Co. v. Prince,* 50 Ill. 26; *Indianapolis & St. L. R. Co. v. Morris,* 67 Ill. 295, and *Cairo & St. L. R. Co. v. Mahoney,* 82 Ill. 73, are to the same effect, but, as will be seen, these are based on the ratification by a general officer of the company of employment made by one without general authority to do so. On the whole, we are inclined to adopt the rule that a general officer of the company has power to make such a contract as is here sued on without showing that he had special authority to do so, and, if an emergency demanding immediate action exists, then the highest officer then present, whether he be conductor of a train, the station agent of the company or the foreman in charge of a gang of workmen, may bind the company for such medical and surgical attendance as the exigencies of the case may immediately demand. We recognize that this rule is one required by an emergency, rather than one based on any general legal principle, and that the authority of the officer with limited powers can extend no further than the emergency demands. As said in *Holmes v. McAllister,* 123 Mich. 493: "Authority to act is implied from the necessity of the case. * * * Neither the authorities nor reason carry the rule beyond the emergency. Such employment does not make the employer liable for the services rendered by the physician to the employee after the emergency has passed. If the physician desires to hold the employer responsible for subsequent services, he must make a special contract with him."

It is urged by appellee that the emergency in this case continued during the time that Crumb was in the hospital, and this was probably the theory upon which the district court directed a verdict for the plaintiffs for the full amount of their claim. *Toledo, St. L. & K. C. R. Co. v. Mylott, supra,* and *Williams v. Griffin Wheel Co.,* 84 Minn. 279, are cited in support of this position. A careful reading of the opinion in the *Mylott* case will disclose that

the only question considered by the court was the right of the plaintiff to recover at all, and that the question of the amount of the recovery was not involved. In the concurring opinion of Davis, J., it is said: "No question is raised as to the extent or amount of the recovery. The only question presented for our consideration is whether appellee was entitled to recover anything. The court does not hold that appellee was entitled to recover for board of others, or for the continued care and nursing of the brakeman beyond the emergency then existing." We do not attempt to define what are primary or emergency services, and *Williams v. Griffin Wheel Co., supra,* does not assist us in attempting to determine the question, as the facts of that case are dissimilar from this case, so far as disclosed in the opinion, and apparently are not fully stated. We believe, however, that emergency services, unless expressly limited at the time of procuring them, ought to extend to a sufficient time for the party employed to communicate with the company, and, if it declines to be further responsible, for notice to the proper poor authorities, if the injured party is entitled to public care.

For the reason that the law will not impose upon the defendant company the duty of caring for one of their injured employees except for emergency treatment, and for the reason that the court refused evidence going to show that the company expressly disclaimed liability for further treatment, we recommend a reversal of the judgment.

ALBERT, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

REVERSED.