## VANDALIA RAILROAD COMPANY v. BRYAN.

[No. 8,650. Filed November 23, 1915.]

1. PHYSICIANS AND SURGEONS.—*Liability for Services.—Persons Liable.*—Ordinarily a person who summons medical aid for another is not liable for the value of such services unless he stands in some relationship creating an obligation to furnish such aid, nor is a corporation generally liable for the employment, by one of its officers, of physicians and surgeons to attend upon sick and injured employes, unless it gave special authority for such employment. p. 227.

2. RAILROADS.—*Employment of Surgeon.—Liability for Services.*— Although on ordinary occasions a station master may not bind the railroad company for medical services, where an employe is injured so that immediate attention is demanded in order to save life, or prevent great injury, authority arises in the highest officer of the company present, by reason of the emergency, to bind the company for such medical or surgical aid as the emergency demands; hence, where a trespasser was struck by a train, and by order of the company's superintendent was sent to a station where a surgeon rendered what assistance was possible, and, in the absence of hospital facilities, the man was then removed to another station where the necessary aid could be procured, the station master at the latter place had authority, in the absence of a higher official, to bind the company for such medical aid as the emergency demanded. p. 227.

3. RAILROADS.—*Employment of Surgeon.—Liability for Services.— Calling in Other Surgeons.*—Where there was authority for the employment of a surgeon by a railroad station master so as to bind the company, and the emergency of the case made additional surgical and medical aid absolutely necessary, the surgeon thus employed was justified in calling the necessary additional aid and could recover for their services as well as for his own. p. 228.

4. PHYSICIANS AND SURGEONS.—*Liability for Services.—Persons Liable.*—Where, pursuant to authority arising from the emergency, a railroad station master employed a surgeon to attend a person struck by a train, and afterwards notified him that the company would not be liable for any further services or attention rendered the injured person, the surgeon could not recover from the company for any services rendered after such notice beyond what was absolutely demanded by the emergency. p. 229.

5. RAILROADS.—*Employment of Surgeon.—Liability for Services.*—Where a surgeon was employed by a railroad station master, pursuant to authority arising from the emergency, to attend a man who had been injured by a train, the right of recovery for the services of such surgeon and of assistants called in by him was limited to emergency or first aid services, and when such services as were necessary to relieve the suffering of the injured party or preserve his life had been rendered, the emergency ceased to exist, and the company was not liable for subsequent medical services, unless by reason of some additional contractual relation. p. 231.

6. RAILROADS.—*Employment of Surgeon.—Action for Services.—Jury Question.*—The question of what constituted first aid emergency services to a person struck by a train, in an action against the railroad company to recover therefor, was a question of fact for the jury. p. 232.

From Knox Circuit Court; *B. M. Willoughby,* Judge.

Action by Charles S. Bryan against the Vandalia Railroad Company. From a judgment for plaintiff, the defendant appeals. *Reversed*

*Pickens & Pickens* and *John G. Williams,* for appellant.

*Shuler McCormick,* for appellee.

IBACH, C. J.—This was an action by appellee on account, in which he recovered $350 for medical and surgical services rendered to Carl Holsappel, at the request of appellant. The evidence shows that on the afternoon of January 2, 1912, Carl Holsappel was injured by one of appellant's trains traveling eastward in Greene County, Indiana, that by the direction of appellant's superintendent he was picked up by the conductor of a westbound train, to be taken to Worthington, that the company's

surgeon at Worthington was waiting, placed a tourniquet on one of his legs, and rendered what assistance was possible, that as there was no place at Worthington to leave him, he was brought to Vincennes, the train stopping enroute at Bicknell, where he was treated by appellant's physician there, that the train arrived at Vincennes after nine o'clock in the evening, and Frank Jamison, appellant's station master at Vincennes, had been notified that the train was bringing in an injured man, and as the appellant's surgeon at Vincennes was not in town, Jamison engaged Dr. Bryan, appellee, to render what aid was necessary, that Dr. Bryan took Holsappel to a hospital, made an examination and found his right leg badly lacerated, and hanging by shreds, and his left foot almost crushed off, and amputation was necessary, that in order to perform this amputation it was necessary for him to have assistance, and he called in Drs. Ramsey and Stewart, for whose services he is seeking to recover, as well as for his own, that Jamison knew of the employment of Drs. Ramsey and Stewart, that the doctors that evening made a thorough examination, gave Holsappel stimulants, and as they found him bleeding from the stump of the right limb, cut off the hanging parts, and controlled the hemorrhage, that they decided that amputation was necessary, and planned for such operation.

Shortly after that, Jamison called Dr. Bryan over the telephone, and told Dr. Bryan that the company had found that Holsappel was a trespasser, and it was not liable for his injury, and would not be responsible for any further medical services rendered to him. Dr. Bryan told him that Holsappel would die if not taken care of, but Jamison refused to accept further liability. Jamison then communicated

with the township trustee of the township in which Vincennes is situated and he refused to accept liability, of which fact Jamison informed appellee that same evening. The doctors continued attention through the night, giving him treatments to overcome shock, and the next morning amputated his right leg and left foot. Dr. Bryan attended him for about six weeks, making about one hundred visits, and the other doctors made in that time some twenty or thirty visits. As soon as possible he was removed to his home at Spencer. Appellant, through Jamison, took some steps towards attempting to recover compensation for Dr. Bryan from the trustee of the township where Holsappel was injured, and the trustee of the township where he lived, he being a poor person, but nothing was collected. Dr. Bryan testifies that at one time Jamison promised to pay him for first aid, but refused to pay for further services, that he never rendered appellant a bill for all his services, but presented to Jamison, as its agent, a bill for $175 for first aid, which he refused to pay. The testimony shows that the reasonable value of all the services rendered by the three doctors was from $1,000 to $1,200. The doctors on cross-examination testified that after Jamison revoked his authority on the evening of January 2, other competent physicians and surgeons could have taken the case from that time and rendered the attention which they gave.

Appellant questions the correctness of several instructions given by the court to the jury. It is urged as an objection to several of these that Jamison had no authority to bind the company for medical services.

Ordinarily, one who summons medical aid for another person is not liable for the value of such services, unless he stands in some relationship creating

an obligation to furnish medical aid. *Cotnam* v. *Wisdom* (1907), 83 Ark. 601, 104 S. W. 164, 119 Am. St. 157, 12 L. R. A. (N. S.) 1090, 13 Ann. Cas. 25, and cases cited. It is also a general rule that "officers of corporations organized for, and engaged in, commercial pursuits, without special authority, can not, as a legal right, charge the corporation with the employment of physicians and surgeons to attend upon sick and injured employes." *Cushman* v. *Cloverdale Coal, etc., Co.* (1908), 170 Ind. 402, 84 N. E. 759.

It is undoubtedly true that on ordinary occasions, and at times when a superior officer was in reach, a station master could not bind the railroad company to pay for medical services. But when an employe is injured by a railroad train, and immediate attention is demanded in order to save life, or prevent great injury, in this pressing and imperious need it is held that when the highest officer of the corporation present engages a physician, the emergency has created in him authority to bind the company to pay for such services as the emergency demands, and no more. *Terre Haute, etc., R. Co.* v. *McMurray* (1885), 98 Ind. 358, 49 Am. Rep. 752; *Terre Haute, etc., R. Co.* v. *Brown* (1886), 107 Ind. 336, 8 N. E. 218; *Louisville, etc., R. Co.* v. *Smith* (1890), 121 Ind. 353, 22 N. E. 775, 6 L. R. A. 320. This rule has also been applied in cases where the injured person was a passenger, or even a trespasser, and we believe that the fact that Holsappel was a trespasser has no bearing on the authority possessed by Jamison when he engaged appellee. Under the facts of this case as known to Jamison and appellee, when Holsappel was brought to Vincennes, Jamison had in the urgent exigency then existing a limited degree of authority as before mentioned. We think that under the circum-

stances of his hiring, appellee was fully justified in undertaking to render services necessary to Holsappel, upon appellant's responsibility. It was not for appellee, in the emergency, to investigate whether appellant was liable to Holsappel before undertaking to aid him. As said in the case of *Bonnette* v. *St. Louis, etc., R. Co.* (1908), 87 Ark. 197, 112 S. W. 220, 128 Am. St. 30, 16 L. R. A.. (N. S.) 1081, "Before sufficient time had intervened to ascertain whether the accident was caused by the negligence of the company, he (the highest agent on the ground) certainly had at least the implied authority to protect his company by doing what might be necessary to lessen the damages in the event it should be afterwards ascertained that the company was liable. This authority would be sufficient to bind the company for his contract with the surgeon." See, also, *Northern Cent. R. Co.* v. *State* (1868), 29 Md. 420, 96 Am. Dec. 545; *Dyche* v. *Vicksburg, etc., R. Co.* (1901), 79 Miss. 361, 30 South. 711; *Marquette, etc., R. Co.* v. *Taft* (1873), 28 Mich. 289, 297; *Tippecanoe Loan, etc., Co.* v. *Cleveland, etc., R. Co.* (1915), 57 Ind. App. 644, 104 N. E. 866, 106 N. E. 739; *Langan* v. *Great Western R. Co.* (1873), 30 L. T. (N. S.) 173.

If the condition of the patient and the emergency of the case made additional surgical and medical aid absolutely necessary, we think that the 3. doctor engaged by appellant's servant to perform the necessary services, would be justified in calling the necessary additional aid, and that in this action he could recover for their services as well as for his own. *Louisville, etc., R. Co* v. *Smith, supra*; *Terre Haute, etc., R. Co.* v. *Brown, supra*; *Board, etc.* v. *Brewington* (1881), 74 Ind. 7.

The next question is as to the revocation of authority, and the amount of recovery. The court seems

to have tried the case on the theory that ap-
4.  pellee was suing to recover for services ren-
        dered under employment by appellant's agent,
that the defense was that the employment was by
mistake, and when the agent discovered it he coun-
termanded the employment, and the court's view was
that if the defense was made out the appellant was
not liable for anything done except what was neces-
sarily connected with the first employment, that is,
whatever was done under it, and whatever was ab-
solutely necessary to do.  The court instructed the
jury that if appellant by its agent employed ap-
pellee to attend Holsappel, and afterward notified
appellee that appellant would not be liable for any
further services or attention rendered to Holsappel,
then appellant would not be liable to appellee for
any services undertaken after such notice.  We
think there was no error in this instruction.  We
have held that Jamison had authority to bind ap-
pellant for emergency services.  We have also held
that his authority expired when he came into com-
munication with his superior officers, and the evi-
dence shows that when he had communicated with
them, he attempted to revoke the authority given.
The question then is, how far could appellee go un-
der the contract previously made with Jamison?
The cases already cited limit the duty of the rail-
road company to the emergency, and its liability to
the services demanded by the emergency.  It was
said in *Ohio, etc., R. Co.* v. *Early* (1895), 141 Ind.
73, 81, 40 N. E. 257, "The duty arises with the
emergency, and with it expires."  In *Toledo, etc.,
R. Co.* v. *Mylott* (1893), 6 Ind. App. 438, 448, 33
N. E. 135, "the liability of the company ended with
the termination of the emergency."  In *Evansville,
etc., R. Co.* v. *Freeland* (1892), 4 Ind. App. 207,
212, 30 N. E. 803, it was held that after the amputa-

tion of the injured man's leg the emergency had expired, and the railroad company could not be bound by the direction of its superintendent of construction to the physician to continue treating him. In *Holmes* v. *McAllister* (1900), 123 Mich. 493, 82 N. W. 220, 48 L. R. A. 396, it was said that the company was liable only "for immediate services made necessary by a present urgency". In *Louisville, etc., R. Co.* v. *Smith, supra,* it is said that the agent "had the authority to do what the emergency demanded, in order to preserve his injured fellow employe from serious harm, but he had no authority to do more." In *Hays* v. *Wabash R. Co.* (1906), 119 Mo. App. 439, 95 S. W. 299, where the rules of the company required the train employes in cases where passengers were injured, to call the nearest competent surgeon, and then notify the company, and the local surgeon of the company, called in by a conductor to attend an injured passenger, did not notify the company, it was held that he could recover only for services rendered for such reasonable time as the company could have been notified and its answer received. In *Terre Haute, etc., R. Co.* v. *Stockwell* (1889), 118 Ind. 98, 20 N. E. 550, where the company was held liable for medical services rendered to a stranger struck by a locomotive, the physician having been employed by the conductor, recovery was allowed on the theory that the general officers of the company, on being informed by the conductor did not repudiate the employment. In many other cases a recovery has been upheld on the ground of ratification by superior officers. In *Holmes* v. *McAllister, supra,* it was said, "Such employment does not make the employer liable for the services rendered by the physician to the employe after the emergency has passed. If the physician desires to hold the employer responsible for subse-

quent services, he must make a special contract with him." In *Salter* v. *Nebraska Tel. Co.* (1907), 79 Neb. 373, 112 N. W. 600, 13 L. R. A. (N. S.) 545, it was said, "We believe, however, that emergency services, unless expressly limited at the time of procuring them, ought to extend to a sufficient time for the party employed to communicate with the company, and, if it declines to be further responsible, for notice to the proper poor authorities, if the injured party is entitled to public care."

Appellant urges that even if it is held that Jamison had authority to hire appellee in the first place, the amount of recovery is too great, for the services rendered before the revocation of authority were, it is contended, not of the value of $350. Appellee urges that all the services were necessarily incident to the first employment, and in this sense were undertaken before the revocation. The effect of the holdings in the cases quoted above would seem to indicate that the emergency must be held to have ceased before all the services rendered by the doctors were given.

We have referred to these cases out of the number in which kindred questions have been considered, for the purpose of showing how far some authorities have gone, which seem to be in accord with the direct holdings and intimations in our own State. In some jurisdictions the rule as announced has been extended, in others it has been limited. It seems to us, however, that all of the better reasoned cases have limited the recovery of physicians employed as was appellee in this case to what should be termed as emergency or first aid services, and no more. And in all such cases an emergency exists where the exigencies are of so pressing a nature that immediate action must be taken to relieve the injured party from his present suffering, or preserve his life, and

when such services have been rendered, the emergency authorizing the original employment ceases to exist, and there is no further liability for medical services unless such further liability arises by reason of some additional contractual relation between the parties. It is the inability of the injured party to obtain medical aid for himself that gives rise to the emergency.

We have examined the record in this case carefully, and we are unable to find any evidence from which the jury could fix the value of the services rendered by appellee falling within the foregoing rule and the law generally covering this case.

We have held that under the facts of this case appellant is liable to appellee for emergency first

6. aid services rendered, and what shall constitute first aid emergency services is a question of fact for the jury, and as there was no evidence introduced from which the value of such services, independent of the value of all services rendered by appellee and the other physicians, can be ascertained, we are required to reverse the judgment. Judgment reversed.

NOTE.—Reported in 110 N. E. 218. As to liability of master for services of physician whom he summons to care for employe, see 18 L. R. A. (N. S.) 174. As to the implied authority of officers, agents or servants to contract for medical, surgical or other attendance or supplies for sick or injured persons, see 3 Ann. Cas. 570; Ann. Cas. 1912 C 474. See, also, under (1) 10 Cyc 926; 30 Cyc 1597; (2) 2 C. J. 662; 10 Cyc 926; 31 Cyc 1399; (3) 30 Cyc 1597; (4) 30 Cyc 1597, 1598; (5) 30 Cyc 1597; 31 Cyc 1401.